THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. JOHN P. MOORE.

1. PERSONAL INJURIES; *Laws of Texas as to Liability; Erroneous Instructions.* The plaintiff brought an action in the state of Kansas against a railroad company for injuries received in the state of Texas, while acting as a brakeman for the defendant, which injuries, he alleged, were caused by the negligence of the defendant and its officers, servants, and employés. In Kansas, a railroad company is liable to each of its servants and employés for injuries caused by the negligence of any other of its servants or employés; but in Texas, where it was shown that the rule of the common law prevails, a railroad company which has exercised due care and diligence in employing and retaining only competent and trustworthy servants and employés, and in obtaining and keeping in a reasonably safe condition all necessary and proper machinery, implements and appliances for the particular work, is not liable for injuries to any one of its servants or employés caused by the negligence of any other of its servants or employés, where they are all mere fellow-servants or coëmployés together; but is liable only for its own negligence, or for the negligence of some one of its officers, agents, servants or employés who amounts in dignity and grade to a vice-principal, or a substituted master for the particular work which he is called upon to perform. The trial court in this case refused to give an instruction to the jury, in substance that under the laws of Texas the defendant was not liable to the plaintiff for injuries caused by the neglect of a coëmployé or fellow-servant; and charged, in substance, that the defendant was liable to the plaintiff for any injuries caused by the negligence of the defendant *or its servants*, as charged in the plaintiff's petition. The question as to whether the defendant was liable at all or not under the facts of the case, was, and is at least, very doubtful; but the jury found that the defendant was liable. *Held,* That the laws of Texas, with respect to the

A. T. & S. F. Rld. Co. v. Moore.

defendant's liability, govern in the present case; and *further held*, that the instructions of the trial court with reference to liability were, under the circumstances of this case, likely to mislead the jury, and were therefore erroneous; and that a new trial must be granted because of such errors.

2. COMMON-LAW DUTIES *of Railroad Company Toward its Servants*. In all cases, at common law, a master assumes the duty toward his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, with reasonably safe machinery, tools and implements to work with, with reasonably safe materials to work upon, and with suitable and competent fellow-servants to work with him; and when the master has properly discharged these duties, then, at common law, the servant assumes all the risks and hazards incident to or attendant upon the exercise of the particular employment, or the performance of the particular work, including those risks and hazards resulting from the possible negligence and carelessness of his fellow-servants and coëmployés. And at common law, whenever the master delegates to any officer, servant, agent, or employé, high or low, the performance of any of the duties above mentioned, which really devolve upon the master himself, then such officer, servant, agent, or employé stands in the place of the master, and becomes a substitute for the master, a vice-principal, and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the acts or was guilty of the negligence. But at common law, where the master himself has performed his duty, the master is not liable to any of his servants for the acts or negligence of any mere fellow-servant or coëmployé of such servant, where the fellow-servant or coëmployé does not sustain this representative relation to the master; nor is he liable for the failure of still other servants to perform certain acts, where the performance of such acts does not come within the proper line of their duties. Applying these principles to railroad companies and to the present case, it is *held*, that a railroad company would be liable to any one of its servants operating its road, for the negligence of any other one of its servants whose duty it was to keep the road in good condition, and who culpably failed to perform such duty, or to give proper warning; for, in such a case, the two classes of servants would not be fellow-servants, or coëmployés, but the latter class would really be the representative of the master, the railroad company, and the failure of the servant would be within the line of his duties. But a railroad company, at common law, and in Texas, (if it has in other respects performed its duty,) is not liable to its servants for the negligence of their coëmployés, or fellow-servants, or for the failure of still other servants to perform certain acts, where the performance of such acts does not come within the proper line of their duties.

*Error from Wyandotte District Court.*

ACTION brought by *Moore* against the *Atchison, Topeka & Santa Fé Railroad Company*, to recover damages for personal injuries. Trial at the July Term, 1882, of the district court, and verdict for the plaintiff for $8,000 damages. New trial denied, and judgment accordingly for plaintiff. The defendant *Company* brings the case here. The facts appear in the opinion.

*Geo. R. Peck,* and *A. A. Hurd,* for plaintiff in error.

*Thos. P. Fenlon,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by John P. Moore against the Atchison, Topeka & Santa Fé railroad company, for damages alleged to have been caused by the negligence of the defendant railroad company and its officers, servants, and employés. The accident occurred at about five or six o'clock in the forenoon, on August 2, 1881, and at a place in the state of Texas situated about one-half mile north of Montoya, a station on the Atchison, Topeka & Santa Fé railroad, in the state of Texas. Montoya is situated about ten miles north of El Paso, Texas, and about thirty-four miles south of Las Cruces, New Mexico. The accident was caused by the engine, on which the plaintiff was riding, and the tender and the front part of the water car, of a train of cars, running into a " wash-out" on the defendant's road, which "wash-out" was about forty feet wide, and situated at the north end of a bridge about two hundred feet long. The train was a freight train, consisting of an engine, a tender, a water car, forty-eight box cars, and one caboose car. It started that morning at about four or five o'clock from El Paso, Texas, to go to San Marcial, New Mexico. The plaintiff was the front brakeman on the train, A. G. Dougan was the hind brakeman, William Kessler was the conductor, John

M. Buckley was the engineer, and Leonard Chrystal was the fireman, and there were two passengers in the caboose car. At the time of the accident, the plaintiff was riding on the engine, and when he saw the "wash-out" he attempted to jump from the engine, but his left foot was caught between the engine and the tender, and was cut off by the "apron," an iron platform hung on hinges, to cover the space between the engine and the tender. The rules of the company required that the front brakeman should ride on the top of one of the box cars, and on the third or fourth car back from the engine, and not on the engine; but it was the universal custom, nevertheless, for the front brakeman on that road to ride between stations on the engine, and this was especially true in bad weather; and it also appears in this case that the plaintiff had been on the engine only a few minutes when the accident occurred, and had gone there for the purpose of obtaining information from the engineer concerning the running of the train. None of the persons on that train had any knowledge of the "wash-out." Neither did any other agent or servant of the railroad company have any knowledge of such "wash-out," though some of them knew a short time beforehand that there was danger of a "wash-out" occurring; and whether this ignorance on the part of some of the servants of the railroad company constitutes any culpable negligence on the part of the railroad company itself, or not, is one of the principal questions involved in this case.

The other circumstances of the case tending to show negligence are as follows: In the afternoon and night of August 1, 1881, there was a heavy rain all along the line of the Atchison, Topeka & Santa Fé railroad near where this accident occurred. This rain extended from El Paso to Las Cruces. Late in the afternoon of August 1, a passenger train passed over the road from El Paso to Las Cruces, and further north. At that time the road was "all right." The conductor, however, on that train, H. F. Allen, and other employés of the railroad company, observed the rain, and noticed that in two or three places there was danger of the embankments

being washed away. There was no telegraph office at Montoya, but there was at Las Cruces; and as soon as the train arrived at Las Cruces, which was about 8 o'clock in the evening, the conductor informed E. J. Guild, the road-master at that place and of that division of the road, what he had seen, though he did not state the particulars thereof or the places where he thought there was danger of the embankments being washed away. The conductor also left a dispatch with the telegraph operator at that place, J. W. Dudley, to be sent to the superintendent of that division, at Las Vegas; and the conductor immediately passed on with his train northward without knowing whether the dispatch was sent, or not, or whether it could be sent, or not. Also, at about the same time — 8 o'clock P. M. — E. J. Guild, the road-master, left a dispatch with Dudley, the telegraph operator, to be sent to Frank B. Gilbert, the train dispatcher for that portion of the road, informing him of the condition of the road, as communicated to him by the conductor, Allen, and asking that no trains should be allowed to pass over the road between El Paso and Las Cruces until the repair train had passed over the same, and the road been placed in good condition. These dispatches from Conductor Allen to the superintendent at Las Vegas, and from Road-master Guild to the train dispatcher, Gilbert, were never sent, and could not be sent. The operator remained at his office until after 12 o'clock that night trying to send the dispatches, but could not do so, for the reason that the wires were either down or crossed. He could not send dispatches in any direction. The roadmaster, Guild, would have had time, with a hand-car, to pass over the road from Las Cruces to Montoya before the train from El Paso arrived at the place where the accident occurred, if he had started immediately after receiving the said information from Conductor Allen; but he would not have had time to do so after midnight, and after it was definitely settled that the dispatches left with the operator could not be sent that night. The section boss of that portion of the road, a man by the name of Husley, lived at

El Paso, and spent his nights at that place. His hours for work were from 7 o'clock in the morning to 6 o'clock in the afternoon of each day. At the time the passenger train of which Allen was conductor passed over the road from El Paso to Las Cruces, the road was in good condition. There was some water, however, running in the ravine where the accident occurred; and at two or three places, as before stated, the embankments of the road were being washed away. Allen's train passed the place where the accident occurred, at about 6 o'clock in the evening. At some time during the night, but when is not definitely known, this "wash-out" occurred which caused the injury; for at 6 o'clock the evening before, the road was "all right," and at 5 or 6 the next morning, when the train on which the plaintiff rode arrived, the "wash-out" was about forty feet wide. No such "wash-out" had ever before occurred in that vicinity; and no "wash-out" of any consequence had ever before occurred on any portion of the road between El Paso and Las Cruces. The road, however, was new, and not much time had elapsed within which "wash-outs" might have occurred. The defendant claims that the present "wash-out" was caused by a sudden, violent and extraordinary rain-storm, which, in the shortest possible space of time, produced a local flood unprecedented in its character; and some of the evidence tended to support such claim. The rain may, however, have continued at that place for several hours. The railroad company depended upon the section bosses, with their men, and the roadmaster, to keep the road in good condition, and to give notice to the train dispatcher and the superintendent when the road was not in good condition; and it did not employ any watchmen, or track-walkers, or flagmen, to keep continual watch of the road during the night. The plaintiff had been in the employ of the railroad company at San Marcial for several months, and had been a brakeman on the road between El Paso and San Marcial for about one month, and consequently knew the general condition of the road at that place, and also the general condition of the climate and

weather in that country; and he must have known of the rain along the line of the road at some time during the afternoon and the night next preceding the accident.

Now if there was any negligence in this case, in what did the negligence consist? and who was guilty of such negligence—the plaintiff, or the defendant, or both?

The plaintiff, in his petition, alleges that the negligence was that of the "defendant *and its officers, servants and employés*," without designating which of the company's officers, servants or employés committed the negligence; while the instructions of the court below to the jury would seem to authorize the finding against the defendant, if any negligence was committed by either "the defendant *or its servants,* as charged in the petition," without designating which of its servants.

This accident, as before stated, occurred in Texas; and the evidence shows that in Texas the rule of the common law

1. Laws of Texas as to liability for personal injuries.

with reference to the liability, or rather the non-liability, of a master to one of his servants or employés, for the negligence of a fellow-servant or coëmployé, prevails; and therefore that where a master exercises due care and diligence in employing and retaining only competent and trustworthy servants and employés, and in obtaining and keeping in a reasonably safe condition all necessary and proper machinery, implements and appliances for the particular work, he is not liable for the negligence of one of such servants or employés which causes injury to another of such servants or employés when they are all fellow-servants or coëmployés together; but is liable only for his own negligence, or for the negligence of some officer, agent or servant of his, who amounts in dignity and grade to a vice-principal or a substitute for the master.

The petition of the plaintiff alleges, among other things, as follows:

"That said train was thrown from the track as aforesaid solely through and by reason of the gross and wanton negligence of the said defendant and its officers, servants and em-

ployés having charge of said road and the running operation
of the same, in this, to wit: in permitting the roadway where
said train was thrown from the track to be and remain in such
a dangerous and defective condition as to necessarily cause said
train to be thrown from the track, by permitting the embank-
ment at said place to be washed from beneath the rails of the
track, and by failing to see that the same was repaired in
time for the passage of the train as aforesaid, and by failing
to warn those in charge of said train in time to prevent the
event aforesaid; that said defendant, its superintendent and
employés in charge of that portion of the roadway, had full
knowledge of the condition of said roadway, and ample time
before the happening of the said injury to know the condition
of and to repair said road, and full time to notify the persons
in charge of said train of the condition of said road so as to
enable them to avoid the injuries aforesaid."

The defendant asked the court below to give the following
instructions to the jury, to wit:

"6. I instruct you that under the law of the state of Texas,
in which state plaintiff's injuries were received, the defendant
is not liable to plaintiff for any injuries occasioned by the neg-
lect of a coëmployé and fellow-servant."

The court refused to give this instruction, and the defend-
ant excepted; and the court gave the following among other
instructions, to wit:

"2. The jury are instructed that, in determining the ques-
tion of negligence in this case, they should take into considera-
tion the situation and conduct of both parties at the time of
the alleged injury, as disclosed by the evidence, and if the jury
believe from the evidence that the injury complained of was
caused by the negligence of the defendant's servants, as charged
in the petition, and without any greater want of care and skill
on the part of plaintiff than was reasonably to be expected from
a person of ordinary care and skill in the situation in which
he found himself placed, then the plaintiff is entitled to re-
cover.   .   .   .

"4. The court instructs the jury that, to enable the plain-
tiff to recover in this suit, it must appear from the evidence
that the injury complained of was occasioned by the want of
attention, carelessness and negligence on the part of the defend-
ant or its servants, as charged in the petition, and was not
simply the result of an accident; and if the jury believe from

the evidence that the injury resulted from an accident that could not have been foreseen or guarded against by the exercise of ordinary and reasonable care and prudence on the part of the defendant, then the plaintiff cannot recover, and the jury should find for the defendant."

The defendant duly excepted to these instructions.

If there was any negligence in this case on the part of the railroad company, in what did the negligence consist, and who was the servant of the railroad company, who was guilty of such negligence? Did the negligence consist in the original construction of the road, or was it merely in failing to repair the "wash-out" after the same had occurred? And in either case, which one of the company's servants was it who committed the negligence? Which one of them was negligent in "failing to see that the road was repaired"? Was it Allen, the conductor of the train that passed along the road the evening before the accident occurred? He, in part, had charge of the "running" and the "operation" of the road; and so had all the other servants of the railroad company on that train; and indeed so had all the servants of the railroad company upon all things; and such, also, was the case with reference to many of the servants of the railroad company, stationed along the line of the road at particular places, and whose business for the railroad company did not require them to leave their stations. Even the plaintiff, and those in charge of the train on which he rode, had charge in part, of the "running" and the "operation" of the railroad; and were they, or any one of them, guilty of negligence in "failing to see that the road was repaired"? From the allegations of the petition and the instructions of the court, it would seem that the jury were left at liberty to find in favor of the plaintiff and against the defendant, if the defendant *or any of its servants* having charge of the road, or charge of the *running* of the same, or the *operation* thereof, were guilty of negligence in permitting the road *to be* and remain in bad condition, or *in failing to see* that the road was repaired, or *in failing to warn* the plaintiff and his coëmployés in charge of his train,

that the road was not in good condition. Now which of the servants of the defendant was it that was guilty of negligence in failing to warn those in charge of the plaintiff's train that the road was in bad condition? Was it Allen, the conductor of the train that passed along the road the evening before the accident occurred? or was it some other servant of the railroad company who was also in charge of Allen's train? or was it some agent or servant of the company at El Paso? or was it some agent or servant of the company at Montoya? or was it some agent, servant or employé of the railroad company on the plaintiff's own train? They all failed to know of the "wash-out," or to *inform* any person concerning the same. Were these employés of the railroad company, and indeed were all other employés of the railroad company culpably negligent? Why did not some one on the plaintiff's train suspect that there might be a "wash-out" at the place where the accident occurred, and send a man ahead of the train to examine the condition of the road? They all evidently had knowledge that it had been raining hard at some time during the previous night. Why did not the engineer, or the fireman, or even the plaintiff himself, who was then riding on the engine, look ahead and see the "wash-out?" Was the engineer negligent? or was some one else on that train negligent?

Under the statutes of Kansas the plaintiff would be allowed to recover damages from the railroad company for injuries caused by the negligence of its engineer, or of any other one of its servants or employés; and the foregoing instructions of the court below would seem to indicate that such statutes would be applicable and would govern in the present case. Such, however, is not the case: such statutes are not the laws of Texas, and such statutes do not govern in the present case. In Texas, a railroad company is not liable to a brakeman for injuries caused by the negligence of an engineer on the same train; nor indeed for the negligence of any fellow-servant or coëmployé, provided of course that the railroad company

41—29 KAS.

has exercised reasonable and proper diligence in their employment and retention.

It is not claimed, however, that any of the servants or employés of the defendant were unskillful or incompetent; but only that they were negligent and careless for the time being. There was no evidence introduced tending to show that any negligence existed in the original construction of the road. From anything appearing in the case, the road was originally in good condition, and was in good condition up to the very night before the morning on which the accident in this case occurred; hence the only room for charging negligence against any servant, agent or employé of the railroad company was the failure on the part of the railroad company or its servants, to repair the road in proper time, or the failure to give proper notice to the persons who were in charge of the plaintiff's train. There was no evidence tending to show that the section boss was negligent. There was no evidence tending to show that either the train dispatcher or the superintendent of the road was negligent; nor indeed was there any evidence tending to show negligence on the part of any officer, agent, servant or employé of the railroad company, except, possibly, on the part of the roadmaster, and the persons in charge of the train on which the plaintiff himself was riding when the accident occurred; and as before stated, the negligence of the persons in charge of the train on which the plaintiff was riding would not, under the laws of Texas, which govern as to liability in this case, render the defendant liable. Allen, and the persons in charge of his train, were certainly not negligent: they performed their whole duty.

It is possible, however, that the jury believed under the instructions of the court below that Allen should have gone back to Montoya and to El Paso, and informed the employés of the railroad company at those places and along the line of road, that the railroad track was in danger. Allen was a "servant" of the railroad company, and if he had done these things, he certainly would have prevented the injury com-

plained of in the present case; and therefore was not his negligence one of the causes of the injury? and therefore is not the railroad company liable under the instructions of the court below for such injury? It does not seem to be claimed that the telegraph operator was negligent, or even that he was a general agent or servant of the railroad company. Probably he was an agent or servant of a telegraph company, and the telegraph company was the agent or servant of the railroad company for this particular matter, and for other special matters. But even if the telegraph operator was the general agent or servant of the railroad company, still this difficult question would arise: Was he not a coëmployé or fellow-servant with the plaintiff in the operation of the defendant's railroad? We do not think that it is necessary, however, to discuss or decide this question; for as we understand it, it is not claimed that the telegraph operator was negligent. He attempted until midnight·to send the dispatches, but could not do so; nor could he send dispatches in any direction. This was sufficient to convince him, or any one else, that dispatches could not be sent that night, nor until the telegraph was put in proper order the next day. In all probability the telegraph was not put in proper order or in proper condition to send dispatches until after the accident occurred on the morning of the next day. Hence we do not think that it was shown that the telegraph operator was negligent.

The real question, then, in the present case, aside from the plaintiff's contributory negligence and with reference to the defendant's negligence, is, whether the road-master was culpably negligent or not. The case, however, does not seem to have been tried upon that theory in the court below. The court below undoubtedly understood the law of the case correctly, but it inadvertently instructed the jury as above stated, and inadvertently left it open for the jury to find in favor of the plaintiff and against the defendant, if they found that any officer, servant or employé of the railroad company was guilty of negligence causing the

*Erroneous instructions.*

injury, whether such officer, servant or employé was a substitute for the master, a vice-principal, or was merely a fellow-servant or coëmployé of the plaintiff. Of course it was the duty of the railroad company to see that its road was in good condition and in good repair at all times, and was liable for injuries caused by the negligence of any servant, agent or employé of the company, high or low, whose duty it was to keep the road in good condition and good repair, and who failed to do so. But the company was not an insurer of the perfect condition of its road. It was simply bound, through certain of its employés — the road-master and section boss, for instance — to use reasonable and ordinary care and diligence to keep its road in proper condition; and such employés, with respect to those who operate the road, represent the company, and indeed are the same as the company. In all cases, at common law, a master assumes the duty toward

2. Common-law duties of railroad company as to its servants.

his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, with reasonably safe machinery, tools and implements to work with, with reasonably safe materials to work upon, and with suitable and competent fellow-servants to work with him; and when the master has properly discharged these duties, then, at common law, the servant assumes all the risks and hazards incident to or attendant upon the exercise of the particular employment or the performance of the particular work, including those risks and hazards resulting from the possible negligence and carelessness of his fellow-servants and coëmployés. And at common law, whenever the master delegates to any officer, servant, agent, or employé, high or low, the performance of any of the duties above mentioned, which really devolve upon the master himself, then such officer, servant, agent or employé stands in the place of the master and becomes a substitute for the master, a vice-principal, and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the acts or was guilty of the negligence. But at common law, where the master himself has

performed his duty the master is not liable to any one of his servants for the acts or negligence of any mere fellow-servant or coëmployé of such servant, where the fellow-servant or coëmployé does not sustain this representative relation to the master; nor is he liable for the failure of still other servants to perform certain acts, where the performance of such acts does not come within the proper line of their duties.

Applying these principles to railroad companies and to the present case, we would think that a railroad company would be liable to any one of its servants operating its road for the negligence of any other one of its servants whose duty it was to keep the road in good condition, and who culpably failed to perform such duty or to give proper warning; for in such a case the two classes of servants would not be fellow-servants or coëmployés, but the latter class would really be the representative of the master, the representative of the railroad company, and the failure of the servant would be within the line of his duty; but a railroad company at common law, and in Texas, if it has in other respects performed its duty, is not liable to its servants for the negligence of their coëmployés or fellow-servants, or for the failure of still other servants to perform certain acts, where the performance of such acts does not come within the proper line of their duties. Now the court below, in its instructions to the jury, does not seem to have properly kept these distinctions in view, but instructed the jury, as the statute law of Kansas is, that the defendant is liable for all the acts and omissions of all its servants or employés contributing to the injury of the plaintiff. We think the jury were probably misled by these instructions. It may be that they should not have been misled by them; but from the manner in which they answered several of the questions submitted to them, we would think that they were in a frame of mind that rendered them very susceptible to the slightest influence favoring the plaintiff, and that all they needed to cause them to go astray in favor of the plaintiff was a very slight intimation from the court. It must also be remembered that the question whether the defendant is liable at all, or not,

is a-very close question. It probably depends entirely upon the question, whether the road-master was guilty of any culpable negligence, or not; and as before stated, it is certainly very questionable whether the road-master was guilty of any such negligence. We would therefore think that as the question whether the defendant was liable at all, or not, was a very close question, no opportunity should have been given to the jury for them to misunderstand the law, or to be misled, or to go astray. The jurors might have been misled from the fact that the laws of Texas with reference to the liability of railroad companies for the negligence of their servants, as between coëmployés, differ from the laws of Kansas in similar cases. If the accident had occurred in Kansas, instead of in Texas, the instructions above quoted would be perfectly correct; for in Kansas, a railroad company is liable to each of its servants and employes for the negligence of all its other servants and employes. But such is not the law in Texas. In Texas, a railroad company is liable to one of its employés for the negligence of such only of its other employés as represent the corporation itself in its entirety for the particular work; such as might for the particular work be fairly denominated vice-principals, or substituted masters; such, for instance as the road-master or section boss, in the present case. But from these instructions the jury may not have been able to see very clearly the distinction between the laws of Kansas and the laws of Texas, and may have really found that the defendant was liable under the laws of Kansas, instead of under the laws of Texas. They may have considered Kansas laws only, and not Texas laws at all.

Counsel for defendant in error says in his brief that "there is no claim made, in the brief of plaintiff [in error] of error, other than those alleged to exist in the instructions given and refused." This is nearly true; so true, in fact, that if it were held that the instructions of the court below were not misleading, then it would follow that the judgment of the court below should be affirmed. We cannot say that the court below committed any material error, except in instructing the

jury, and the consequent error in overruling the defendant's motion for a new trial. We cannot say from the evidence in the case that, *as a matter of law,* no culpable negligence for which the defendant is liable, was committed.

We think the court below erred in its instructions to the jury, and erred in refusing to grant the defendant a new trial; and for these errors the judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.