THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. JOHN P. MOORE.

1. ROAD MASTER.—*Representative of Company.* A road master of a railroad company, upon whom is imposed the duty of directing the repairs of the road and keeping the road in safe condition, is, in the line of his duty, the representative of the master—the representative of the company. (29 Kas. 632.)

2. CULPABLE NEGLIGENCE *of Road Master; Company Liable.* Where the road master of a railroad company, whose duty it is to direct repairs and keep the road in safe condition, is culpably negligent in the performance of his duty, the railroad company, even under the rule of the common law, is liable for the damages resulting from such negligence to one of its other servants or employés.

3. EXCESSIVE DAMAGES, *New Trial Not Granted Because of.* In an action brought by a brakeman, twenty-seven years of age and receiving wages of $60 per month, against a railroad company for damages caused by the negligence of the company, where the permanent disability is the loss of a leg below the knee, and where the plaintiff after his injury had his leg sawed off three times before the surgeon got it right; then was confined to his room over fifty days and during the time had the lockjaw for twelve or fifteen days so severely as to be unconscious at times, and suffered everything that a man could suffer and not die; and upon the first trial a verdict for $8,000 was rendered, and upon the second trial a verdict for $10,000: *Held,* The last verdict is not so excessive as to warrant the supreme court to set it aside and grant a new trial solely on the ground of excessive damages.

*Error from Wyandotte District Court.*

ACTION by *Moore* against the *Railroad Company* to recover damages for bodily injuries. July 30, 1883, judgment for

plaintiff for $10,000. New trial denied. Defendant brings the case here. The facts appear in *A. T. & S. F. Rld. Co. v. Moore*, 29 Kas. 632, *et seq.*, and in the opinion, *infra*.

*Geo. R. Peck*, *A. A. Hurd*, and *Robt. Dunlap*, for plaintiff in error.

*Thos. P. Fenlon*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action to recover damages for injuries sustained by the plaintiff, the defendant in error, near Montoya, Texas. The accident occurred on the morning of August 2, 1881. The plaintiff was a brakeman on a train which had started that morning from El Paso, Texas, to go to San Marcial, New Mexico. At the time of the accident he was on the engine, where he went to leave his lamp. When he saw the washout on the road ahead of the engine, he called to the engineer and made a jump to get off. The engine dropped down off the bridge six or eight feet, and the apron (a piece of sheet iron to cover the space between the engine and tender) was thrown over so hard that it flew back and caught the plaintiff's leg and cut it off. The case was before this court at our January term for 1883. (29 Kas. 632.) The judgment of the district court was then reversed, and the cause remanded. Upon the second trial, the jury returned a verdict for the plaintiff for $10,000. Judgment was rendered thereon in his favor, and the cause is before us again for review. Upon the former hearing in this court, the judgment was reversed because the trial court failed to instruct the jury as to the liability of the railroad company under the common law, which is in force in Texas.

The evidence upon the new trial was the same as that of the first trial. Therefore it is unnecessary to recite the facts here, as they are set forth at great length in the report of the case in 29 Kas., *supra*. In the former opinion in this case, Mr. Justice VALENTINE, speaking for the court, after a review of the facts said that—

"The railroad company in Texas, under the rule of the

common law, would be liable to any one of its servants operating its road, for the negligence of any other one of its servants whose duty it was to keep the road in good condition, and who culpably failed to perform such duty or to give proper warning; for, in such a case, the two classes of servants would not be fellow-servants or coëmployés, but the latter class would really be the representative of the master—the representative of the railroad company—and the failure of the servant would be within the line of his duties."

In view of this declaration of the law, the material question upon the second trial, aside from the alleged contributory negligence of the plaintiff, was whether the road master, one E. J. Guild, who had charge of the road from Las Cruces, New Mexico, to Montoya, Texas, was culpably negligent or not. He testified:

"That his duties were generally to direct repairs and keep the road in safe condition; that in case of any sudden or serious break in the road, or any apprehension of danger to trains, to see, if possible, to have the road repaired, and notify the train dispatcher of the facts in the case, if he could not get them repaired; that it was his duty also in case of washouts to use every possible means to prevent accidents; that in the evening of August 1, 1881, he was informed by William Allen, the conductor of a train on the railroad, which had just reached Las Cruces from El Paso, 'that it was raining; that the water was rising in some of the creeks; and that if the rain continued, it was likely to wash the road.' He then left a message with the telegraph operator at Las Cruces for the train dispatcher at San Marcial, telling him not to send any trains over that division until he could go over it in the morning with the work train; that after giving the message to the operator, he did not remain in the office to see whether it was sent; that he stayed in Las Cruces that night in a house, or car used as a house; that he had there, subject to his orders, an engine, a hand-car, and section men."

The message was not sent, and evidence was produced to show that the telegraph operator could not do so for the reason that the wires were either down or crossed. The road master further testified "that if he had known that his message had failed to reach its destination, he could have

taken an engine or hand-car and gone down that night over the road." Upon the evidence, the jury returned the special finding that the road master, with the information he had, did not do all that a man of ordinary prudence would have done; and further found "that he utterly failed to perform his duty, under the circumstances, in that he did not wait to know positively that his message was received by the train dispatcher." This finding being supported by some evidence, renders the railroad company, under the previous decision of this court in this case, liable. (29 Kas. 632.) It was the duty of the company to see that its road was in good condition and in good repair all the time, and it was liable for injuries caused by the negligence of its road master, whose duty it was to keep the road in good condition and repair, if he culpably failed to do so or to give proper warning.

If it had not been that the instructions of the trial court upon the first trial were misleading, the prior judgment would have been affirmed. Upon the new trial the law was declared to the jury as directed by this court, with perhaps the single exception of the instruction relating to the conduct of the telegraph operator at Las Cruces. In view however of the special finding of the jury that the road master was culpably negligent, it is not necessary to express any opinion whether the telegraph operator at Las Cruces, who the evidence tended to show was an employé of the railroad company, and the plaintiff were fellow-servants within the meaning of the rule of the common law that the servant takes the risks of dangers ordinarily attending or incident to the business in which he voluntarily engages for compensation, including the carelessness of his fellow-servants. As we cannot say from the evidence in the case that as a matter of law no culpable negligence for which the railroad company is liable, was committed, we cannot upon the special findings of the jury reverse the judgment; nor can we in consideration of the special findings disturb the judgment for any direction given to the jury.

It is also claimed that the trial court should have set aside the verdict and refused judgment thereon, because it is alleged

that the damages are excessive. The evidence conduced to show that the plaintiff when he was hurt was 27 years of age, and receiving as brakeman $60 per month; that his leg was sawed off three times before the surgeon got it right; that he was confined to his room for over fifty days; that he had the lockjaw for twelve or fifteen days so severely as to be unconscious a part of the time; and that "he suffered everything that a man could suffer and not die." Upon the first trial the verdict for the plaintiff was $8,000; upon the second trial this was increased to $10,000. On consideration of all the circumstances, we cannot "say that the damages are so excessive as to strike the mind at first blush as being the result of bias or prejudice." Therefore we cannot as a reviewing court set aside and grant a new trial solely on the ground that the damages are excessive.

The judgment of the district court will be affirmed.

All the Justices concurring.