# THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY V. ALFRED M. SEELEY.

1. RAILROAD CAR, *Defectively Loaded — Brakeman Injured — Fellow-Servants — Company Negligent — Liability.* A construction train was operating in Missouri, carrying supplies along the line of the railroad. An open car was loaded with coal at a station, and upon the top of the load two smokestacks were loosely placed, subject to be shaken off by a jerk resulting from the starting or stopping of the train. The duty of loading such cars devolved upon the station agent, and not upon the trainmen; and it was the duty of the yard master, and in his absence that of the station agent, to see that open cars were properly inspected and prepared to be put into the train for transportation. When the train reached the station, a brakeman was directed to hurry and couple the car ahead of the engine, so as to get out of the way of a coming train, and was then directed to hurry and get upon the front end of the car, and keep a lookout upon the track in the direction they were going, the car being pushed ahead of the engine to a siding a short distance away. In this position, and looking forward, his back was toward the loose smokestacks on top of the coal. While he was occupying this place, the engineer carelessly applied the air brake, checking the speed of the train, and jerking the coal car so that the loose smokestacks pushed forward, and struck the brakeman upon the body, throwing him down under the wheels of the car, whereby he was badly injured. There was testimony that he had no knowledge or opportunity to know of the dangerous condition of the car. Upon a trial, the jury found that the injury resulted from the negligence of the company, and not from any want of care on the part of the brakeman. *Held,* That it was the duty of the company to properly prepare and inspect the car before it was turned over to the trainmen for transportation; and those who did prepare and inspect the same were not in the same grade of service with the trainmen, and they did not stand as to each other in the relation of fellow-servants; and further, that the company is liable for the negligence and resulting injury.

2. EVIDENCE — *Verdict.* Evidence examined, and *held* to be sufficient to sustain the verdict of the jury.

## Error from Johnson District Court.

ACTION by *Seeley* against *The Railroad Company* to recover damages for bodily injuries. Judgment for the plaintiff. The defendant brings the case to this court. The facts appear in the opinion herein, filed July 6, 1894.

*A. A. Hurd, Robert Dunlap,* and *W. Littlefield,* for plaintiff in error.

*A. Smith Devenney,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action brought by Alfred M. Seeley against the Atchison, Topeka & Santa Fé Railroad Company to cover damages for personal injuries alleged to have been sustained because of the negligence of the railroad company. In his petition, he alleged that on April 2, 1889, he was in the employ of the Atchison, Topeka & Santa Fé Railroad Company, which operated and controlled a railroad extending from Kansas City to Chicago, known as the Chicago, Santa Fé & California Railroad Company.

He acted in the capacity of brakeman on a construction train, and, on the morning of April 2, 1889, the construction train, composed of several box cars loaded with coal, with an engine attached, started from Coburn, Mo., in charge of a conductor, and when they reached the station of Courtney, in Missouri, the conductor and trainmen were ordered to attach to the train a car loaded with coal, and upon which there were two round iron smokestacks about 16 feet in length and two feet in diameter, and take the car so loaded with coal and the smokestacks to Wayne City, about a mile and a half distant. In obedience to this direction, the car so loaded was attached in front of the engine, and, by order of the conductor, Seeley took his station on the top of the coal car, which was being pushed in advance of the engine, in order to signal the engineer when they approached the switch where the car was to be placed, when it was his duty to leave the coal car and turn the switch.

While he was thus at his post, and in the act of passing along the end of the coal car in front of one of the iron smokestacks, which were lying loosely on top of the coal, with his back toward the engineer, and exercising due care, the engineer, well knowing the plaintiff's dangerous position in front

of the smokestack, and not waiting for the usual and necessary signal from Seeley to slow up, as was his duty, carelessly applied the automatic air brake and air pump to his engine, and without any warning to the plaintiff of his intention to do so, thereby checking the speed of the train, and violently jerking the coal car, causing the smokestacks, which were lying loosely on the top of the car, to push forward, striking Seeley violently upon the breast and body, throwing him from the car, upon the rails in front of the train, and under the wheels of the car, whereby he was cut and badly bruised, his right leg was caught under the wheels, and crushed and mangled to such an extent that amputation near the kneejoint was necessary in order to save his life, and he was otherwise permanently injured, to his damage in the sum of $15,000.

It was alleged that the smokestacks were improperly and defectively loaded, being "unscotched" and unfastened on. top of the coal, and that Seeley had no connection with the loading and no knowledge of the negligent manner in which they were loaded, and was not guilty of any negligence which contributed to his injury. This negligence of the company is claimed to be the principal and proximate cause of the injury suffered. The answer of the defendant was, first, a general denial; next, that the common law was in force in Missouri, and that the injury was caused by the negligence of the fellow-servants of Seeley, or by his own carelessness or negligence.

Upon the trial, the jury found that on April 2, 1889, the Atchison, Topeka & Santa Fé Railroad Company was the lessee of and operated the Chicago, Santa Fé & California railroad, and that Seeley was at that time in the employment of the lessee as brakeman. It was further found, that the defendant company was guilty of negligence in loading the smokestacks upon the coal car; and further, that the engine driver of the construction train was also guilty of a want of ordinary care in handling his train; but that the manner in which the smokestacks were loaded upon the car was the proximate cause of the injury. In answer to questions, it

was found that the conductor ordered Seeley to hurry up and couple the coal car in front of the engine, and to hurry and get upon the front end of the coal car and keep a lookout ahead for danger until the place for switching should be reached, and that, in order to obey this order, he had to stand with his back to the smokestacks and to the engine, and therefore had no reasonable opportunity to observe the defectively loaded condition of the smokestacks, or the dangerous position in which he stood. It was further found to be the duty of the yard master to inspect the loads of all open cars before such cars were put into the trains for transportation, and that such yard masters were employes of a higher grade than that of brakeman on a construction train; and that the defendant company knew or could have known by the exercise of reasonable diligence that the smokestacks were dangerously loaded, and that if they had been "scotched" or fastened in some manner to the car Seeley would probably not have been injured. The jury found that Seeley was entitled to recover the aggregate amount of $7,943.25, which was made up from three items: $350 for loss of time from April 2, 1889, to November 1, 1889; $700 for the pain and bodily suffering endured since that date by reason of his injury; and $6,893.25 for the permanent disability, including interest from April 2, 1889.

The railroad company alleges error, and contends that the evidence fails to show that Seeley was in the employ of the Atchison, Topeka & Santa Fé Company when the injury occurred, but that it does conclusively show that he was in the employ of the Chicago, Santa Fé & California Railroad Company. There is testimony to the effect that the plaintiff in error had leased and was operating the Chicago, Santa Fé & California railroad on April 2, 1889, when Seeley was injured, and also testimony that he and the other trainmen associated with him were in the employ of the Atchison company as such lessee. It is true that there is much testimony tending to show that the Chicago road had not yet passed into the hands of the Atchison company, and

that the officers of the former had employed Seeley and were
still in the control of the road when he was injured.   The
form of the pay checks used tended to sustain this position.
E. Wilder, however, who was secretary and treasurer of the
Atchison company, stated positively that the Chicago road
had been leased to and was operated by the Atchison com-
pany since the 1st of March, 1889, which was more than a
month prior to the occurrence of the injury.
2. Evidence—     Which one of the companies was controlling and
   verdict.
operating the road was a question for the jury to
settle, and having been decided upon conflicting evidence the
controversy on that point is ended.

The principal contention in this case is, that the injury was
the result of the negligence of the fellow-servants of Seeley,
for which, at common law, the company was not liable.   It
was admitted at the trial that the common law was in force
in Missouri, where the injury occurred, and decisions of the
supreme court of that state were introduced in evidence which
showed that the common law in respect to the liability of the
master has not been changed or modified by any statute of
that state.   The placing of smokestacks upon the top of a
loaded coal car, without fastenings or guards, was a clear case
of negligence on the part of those who loaded them and those
whose duty it was to inspect and prepare the car for trans-
portation.   The bed of the car was filled with coal, and the
smokestacks lay loosely upon the top, subject to be shaken
off by a jerk resulting from the starting or stopping of the
train.   Neither Seeley nor any of the trainmen associated
with him loaded or assisted in loading the smokstacks upon
the car, and he claims that he had no knowledge or oppor-
tunity to know that they were loose and " unscotched."   There
was no yard master at the station of Courtney, and the duty
of loading them and seeing that they were properly loaded
devolved upon the station agent at that place.   The car was
already loaded, and was hurriedly placed in the train as soon
as they reached the station of Courtney.   If Seeley had in-
spected the car, he would readily have seen the dangerous

condition of the smokestacks, but he accounts for his failure to notice the danger by the fact that the top of the car was higher than his head and by the urgent character of the orders given him by the conductor. He was told to hurry up and couple the car ahead of the engine, so as to get out of the way of another train that was following them, and was then told to hurry up and get on the front end of the car, and keep a lookout for anything that might appear upon the track. In this position, and looking forward, his back was toward the smokestacks, and hence he did not discover their condition or the peril he was in until one of them slipped and struck him upon the body.

Taking the testimony of Seeley as true, it is enough to sustain the finding that he was not guilty of contributory negligence. He had a right to assume that the car was safely loaded and in a fit condition for transportation, and that the place of lookout which he was required to take on the end of the car was free from peril on account of the manner in which it was loaded. It was the positive duty of the company to safely load the car, and before starting it to inspect and see that it was in a safe condition for those who were required to handle it; and Seeley had a right to expect that it was properly prepared for shipment, had been duly inspected and found to be in a suitable condition to be attached to the train. Whether he was aware of the condition of the car, or, under the circumstances, should have observed its condition, was a question for the jury to determine. From the testimony which he gives respecting his want of knowledge or opportunity to know of the danger, the positive command to hurry up so as to get out of the way of a coming train, and the order to keep a lookout in a direction which did not bring the danger within the range of his vision, it cannot be said that the finding of the jury with respect to his care is without support.

The question remains whether the company can be held liable for its negligence in failing to properly prepare and inspect the car before it was turned over to the trainmen for transportation. It is contended that those who inspected and

made the car ready for transportation were the fellow-servants of Seeley, and that he not only assumed the risk incidental to the nature and character of his work, but also assumed the risk of being injured through the negligence of a fellow-servant. According to the testimony and findings, it was the duty of the yard master to inspect the loads of all open cars before they were put into trains for transportation, and it was also found that this officer is one who has authority to hire and discharge men under him, and that he was an employé of a higher grade of service than that of a brakeman on a construction train. It also appears that in the absence of the yard master the duty of preparing and inspecting cars belonged to the station agent. The fact that all these servants draw their pay from a common master, and are engaged together in carrying on his work, does not necessarily make them fellow-servants. If it had been the duty of the trainmen to have loaded the car, and one of them had negligently done so, it might be held that the resulting injury was due to the negligence of a fellow-servant; but in this case, although they were working for a common master, they were not engaged in the same grade of service. The trainmen had no part in the loading of this car, nor in the inspecting of it. It was the positive duty of the company to furnish suitable instrumentalities for the performance of the work, and a safe place in which to carry it on; and it has been held that

" Those employed by the master to provide or to keep in repair the place, or to supply the machinery and tools for labor, are engaged in a different employment from those who are to use the place or appliances when provided, and they are not, therefore, as to each other, fellow-servants. In such case, the one whose duty it is to provide and look after the safety of the place where the work is to be done represents the master in such a sense that the latter is liable for his negligence." ( *Sadowski v. Car Co.*, 84 Mich. 100.)

According to the record, the principal and promoting cause of the injury was the defective condition of the car furnished to the trainmen for transportation. If it had been properly

inspected, the defect would have been remedied; and although this duty was to be performed by a servant of the company, it was a duty which the company owed to Seeley and his associates, and it cannot be exonerated from liability because the duty was delegated to an agent or an employé. Whether they are fellow-servants does not depend so much upon the grade or situation which each holds as upon the character of the work out of the negligent performance of which the injury arises. Although there is much diversity of opinion as to whether the negligence of inspectors and such employés as those who loaded and should have inspected the car can be attributed to the company, our own decisions, as well as the weight of authority, are to the effect that the employés in question in this case do not stand as to each other in relation of fellow-servants. In *A. T. & S. F. Rld. Co. v. Moore*, 29 Kas. 644, it is said that—

1. Railroad car, defectively loaded—brakeman injured—fellow-servants—company negligent—liability.

" At common law, a master assumes the duty toward his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, with reasonably safe machinery, tools and implements to work with, with reasonably safe materials to work upon, and with suitable and competent fellow-servants to work with him; and when the master had properly discharged these duties, then, at common law, the servant assumes all the risks and hazards incident to or attendant upon the exercise of the particular employment or the performance of the particular work, including those risks and hazards resulting from the possible negligence and carelessness of his fellow-servants and coemployés. And at common law, whenever the master delegates to any officer, servant, agent, or employé, high or low, the performance of any of the duties above mentioned, which really devolve upon the master himself, then such officer, servant, agent or employé stands in the place of the master and becomes a substitute for the master, a vice principal, and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the acts or was guilty of the negligence. "

In *A. T. & S. F. Rld. Co. v. Moore*, 31 Kas. 197, this doc-

trine was applied, and it was held that the duty of keeping the road in safe condition devolved upon the master, and that the company was liable for injuries resulting from the negligent performance of those duties by its servants or employés. The same doctrine was applied in *H. & St. J. Rld. Co. v. Fox*, 31 Kas. 586, where it was held that the company was liable where an employé was injured in Missouri through the negligence of a car repairer, and without fault of his own. In *St. L. & S. F. Rly. Co. v. Weaver*, 35 Kas. 420, it was held that a section foreman was not a coemployé with a person who was assisting in operating a railroad train for the the same employé. In *Mo. Pac. Rly. Co. v. Dwyer*, 36 Kas. 58, it was held that an inspector of cars is not a fellow-servant with a brakeman operating such cars, within the meaning of that rule of the common law which exempts the master from liability for negligence between coemployés or fellow-servants. In that case, it was urged that if the company had employed careful and competent inspectors, and had performed its whole duty, it would not be liable, even though the injury complained of was the result of their negligence, upon the ground that the inspectors were fellow-servants of the brakeman. Chief Justice HORTON declared that the law was otherwise in this state, and cited *Long v. Railway Co.*, 65 Mo. 225, and *Condon v. Railway Co.*, 78 id. 567, showing that the supreme court of Missouri entertained a like view. In *Mo. Pac. Rly. Co. v. Barber*, 44 Kas. 612, it was ruled that it was the positive duty of a railroad company to inspect a freight car and see that it was reasonably fit for service, and that the omission of this duty renders it liable for resulting injury to its employés.

As has been said, there are some duties which the company, as master, owes to its employés from which it cannot relieve itself except by performance. The providing of a safe place for Seeley to work, and of servicable and safe appliances and instrumentalities to be used in connection with his work, was a positive duty, and those who performed or should have performed the same stand in the place of and

represent the company. In *Railroad Co. v. Baugh*, 149 U. S. 368, which is cited by the plaintiff in error, this doctrine was recognized to the fullest extent, although it to some extent modified the decision in *Railroad Co. v. Ross*, 112 U. S. 377. As to positive duties of this character, it was held that the servant had

"a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employé, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects. Therefore, it will be seen that the question turns rather on the character of the act than on the relations of the employés to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor."

In the Baugh case, the supreme court of the United States fully indorses the doctrine of *A. T. & S. F. Rld. Co. v. Moore*, 29 Kas. 632, and quotes largely from that opinion as to the relation of the master to the servant, and the doctrine of fellow-servants. In the recent case of *Railway Co. v. Snider*, 14 Sup. Ct. Rep. 756, a brakeman in the employment of the company was alleged to have been injured through the negligence of an inspector, and it was held that they were not fellow-servants, and that, under the circumstances, it was the duty of the company to see that the cars that were about to be drawn out upon the road were in a safe and proper condition, and that this duty could not be delegated by the company so as to exonerate it from liability to its servants from injuries resulting from omission to perform that duty, or through its negligent performance. It was held that

"The duty of a railroad company to exercise reasonable care in furnishing adequately safe trains for the use of its employés is not discharged by simply using reasonable care to employ and retain only competent and diligent inspectors,

but it is liable if its inspectors in fact fail to discover a defect which a reasonable examination would have disclosed."

Aside from the consideration that it was the positive duty of the company to properly prepare and inspect the car for transportation in the train, it is also clear that those who were to perform that duty were not in the same grade or employment of the service as the brakeman on the train, and therefore could not in either view be held to be fellow-servants. An authority is cited to the effect that, where the company has employed a competent inspector to see that the cars are properly loaded and in good condition, it cannot be held liable for the negligence of the inspector in failing to observe that the car was improperly loaded. (*Dewey v. Railroad Co.*, 56 N. W. Rep. [ Mich. ] 756.) This authority is not satisfactory to us nor in line with the decisions that have been cited. We are unable to see any reason for a distinction between the preparation and inspection of the car itself as a fit instrumentality to be placed in a train and the preparation and inspection of a loaded car to be placed in the train for transportation. Each is an instrumentality to be used in connection with the services necessary to be performed by the trainmen in its transportation, and no distinction between them is seen, so far as the obligation of the company or the safety of the employes engaged in handling it are concerned. The inspection in either case is made with reference to the same end, and the person to whom this duty is delegated stands in the place of the company, and the latter is responsible for his acts.

The charge of the court is criticised, and while the instructions are voluminous and involve many repetitions and some immaterial matter, we find nothing in them which is not in harmony with the views expressed, nor which can be held to be prejudicially erroneous. The judgment will be affirmed.

All the Justices concurring.