Henry C. Rouse, *Receiver de bonis non of the Missouri, Kansas & Texas Railway,* v. Elmina Downs, *as Admistratrix of Major W. Downs, deceased.*

No. 144.

1. Civil Procedure — *overruling motion to make surplusage more definite and certain, not prejudicial error.* Where a petition contains unnecessary allegations and phrases which are treated in the trial of the case as surplusage, and there is no claim that the defendant is misled thereby; where no evidence is admitted to sustain them; where no instructions are based thereon; where they are not considered by the jury and furnish no basis for the judgment; *held,* that no prejudicial error was committed in overruling the motion to make more definite and certain.

2. Pleading — *"gross, wanton and criminal negligence," adjectives are surplusage.* When the petition in an action in which exemplary damages are recoverable charges negligence, and the qualifying adjectives, "gross, wanton and criminal," are used to qualify the word " negligence," these words are properly treated as surplusage, and the petition states a cause of action.

3. Instruction — *proper items of damage alone found, refusing, that jury cannot find any other items, not error.* Where the jury finds the plaintiff entitled to only those items which are allowed her under the law, the defendant cannot complain because the court refuses to instruct the jury that they cannot find any other items.

4. ———— *in giving, court may use its own language.* In giving instructions the court may state the law in its own language.

5. ———— *jury finding against theory on which predicated, refusing, not error.* It is not error to refuse to give an instruction when the jury find against the theory upon which it is predicated.

6. Co-EMPLOYEES — *section men and work gang are not, of fire-
   men.* Where a switch is constructed under the supervision and
   control of a division roadmaster in' the line of his duty, such
   roadmaster is the representative of the railway company; and,
   where the issue is as to whether or not the switch is properly con-
   structed, the court does not err in refusing to instruct the jury
   that, if the switch was constructed by the section men and work
   gang, said employees would be co-employees of a deceased fireman,
   and for any negligence of such co-employees the company would
   not be liable.

Error from Neosho District Court.   Hon. L. Still-
well, Judge.   Opinion filed March 3, 1897.   *Affirmed.*

This action was brought in the District Court of
Neosho County, by Elmina Downs, as plaintiff, against
the Receivers of the Missouri, Kansas & Texas Rail-
way Company, as defendants, to recover the damages
sustained by reason of the death of her minor son,
Major W. Downs, who was killed in a railroad wreck
while acting in the capacity of fireman in the employ
of said Receivers.   It is conceded that the deceased
was a fireman in the employ of the Receivers of the
company, and, at the time of his death, was engaged
in the discharge of his duties as such fireman be-
tween Paola and Coffeyville, Kan., on what is known
as the Kansas City & Pacific division of the Mis-
souri, Kansas & Texas Railway system.   On the
twenty-fourth day of May, 1890, the employees of the
Receivers had put in a switch and switch connec-
tion at a small station on the line of the road, known
as Bangor, which is some twelve or thirteen miles
south of Paola, and connected said switch with the
main line of the Kansas City & Pacific division of
said system.

At about three o'clock of the morning of the twen-
ty-fifth — Sunday — the train on which Downs was act-
ing as fireman came down over this switch, and the

Rouse, *Receiver*, v. Downs, *Administratrix*. 551

March 3, 1897.     Opinion.   Dennison, P. J.           E. Div.

engine jumped the track at or about this switch con-
nection.    This resulted in a very disastrous wreck.
The engine was turned nearly around and was thrown
upon its side.    Several cars upon the switch and in the
train were demolished.    Engineer Caskey and Fireman
Downs were so badly injured that they died shortly
afterwards.    After the wreck it was discovered that
there was an indentation in the end of one of the
rails at the switch connection, as though it had been
struck by the flange of a wheel.    The verdict of the
jury was in favor of the plaintiff below for the sum
of five hundred dollars, of which $250 was for loss of
the society, comfort and protection of her son, and
$250 was for the loss of his support from the time of
his death until he should arrive at the age of twenty-
one years.

Judgment was rendered upon the verdict, and the
defendants below bring the case here for review.

*T. N. Sedgwick*, for plaintiff in error.

*C. A. Cox*, and *J. L. Denison*, for defendant in error.

Dennison, P. J.   The errors complained of are dis-
cussed under four subdivisions, as follows : *First*,
overruling the motion to make the petition more defi-
nite and certain ; *second*, the petition does not state a
cause of action ; *third*, overruling the demurrer to the
evidence of the plaintiff below, and refusing to in-
struct the jury to find for the defendants below ;
*fourth*, instructions refused by the court.

It is probable that the petition was a little more de-
scriptive than was necessary.    However, we cannot
ascertain wherein the rights of the plaintiff in error
were prejudiced thereby.    The unnecessary allega-
tions or phrases were treated as surplusage upon the
trial.    It is not claimed that the defendant was mis-

led thereby nor that any evidence was admitted to sustain the objectionable allegations of the petition, neither were the instructions based thereon, nor were they considered by the jury; they certainly do not furnish any basis for the judgment rendered. No prejudicial error was committed in the overruling of the motion to make the petition more definite and certain.

The second subdivision charges that the petition does not state a cause of action. The petition alleges, that the defendants below carelessly, negligently and unskillfully constructed the switch on the twenty-fourth day of May, 1890; that the rails and the switch connection were put together and left in an unfinished condition and in a dangerous, unsafe manner; that by reason thereof the train ran off the track, causing the wreck which crushed the skull of the said Major W. Downs, and scalding and wounding him so much that he shortly afterwards died. After these allegations is the following statement:

"That the death of the said Major W. Downs and the wreck which caused his death were caused by the gross, wanton and criminal negligence of the said defendants, their agents and servants, in the careless, unskillful and negligent manner in which said switch and siding were built and connected with the main line, or track, and the negligent manner in which the irons or rails of said main track were relaid, and in the careless and negligent manner in which said switch was left on the night of said wreck, and in the insecure, unsafe and dilapidated condition of said track, switch and switch connection at said place of injury. That said Major W. Downs was without fault or negligence in the premises."

It is contended that the words "gross, wanton and criminal," used to qualify the word "negligence," make this an action for exemplary or vindictive dam-

Rouse, *Receiver*, v. Downs, *Administratrix.* 553

March 3, 1897.        Opinion.  Dennison, P. J.              E. Div.

ages; and that no damages are claimed by reason of common or ordinary negligence. The other allegations not upholding a claim for exemplary damages, it is contended that the petition fails to state a cause of action. No authorities are cited to maintain this novel proposition. The petition states a cause of action, and states it quite strongly. The qualifying adjectives, "gross, wanton and criminal," were properly ignored in the trial of the case, and the case was tried as an action for ordinary negligence. These words were also properly treated as surplusage.

The third subdivision complains of the overruling of the demurrer of the defendants below to the plaintiff's evidence, and the refusal of the court to instruct the jury to find in their favor. In support of this complaint, plaintiff in error contends that there was an absolute lack of evidence tending to establish the fact that, at or prior to the time of the wreck, there was any defect in the construction of the switch or the manner of its connection with the main track; but that, if such defect had been shown to exist, it must have been further shown that it was the cause of the wreck, and that such defect was known to the company or its proper officers, or that by the use of reasonable and ordinary care said company might have known of it.

The pleadings and the evidence in this case were based largely upon the defective condition of the switch, and its connection with the main track. The plaintiff below contended and sought to prove, that the switch and the connection were constructed under the supervision of the division roadmaster; that the rails constituting the switch proper, were not in alignment with the rails of the main track, and that by reason of such defect of alignment a portion of

the switch rail extended past the main-line rail so as to leave what is called in railroad parlance a "lip"; that the flange of the engine trucks struck the end of the rail which projected on the lip, and climbed upon the top of the rail and ran off, thereby causing the wreck. The plaintiff below also contended that the Receivers were careless, unskillful and negligent in the construction of the switch and the connections as aforesaid, and left them in an unfinished, dangerous and unsafe condition. Conductor Moran, who was in charge of the train at the time of the wreck, testified on behalf of the plaintiff below, that shortly after the wreck occurred he examined the track where the engine left it, and he described its condition as follows:

"I noticed the switch was entirely out of place, and a heavy mark on the end of the west rail; and this mark continued on the top of the rail until it reached the frog, and at that point the engine left the track. The marks, as above stated, were, in my opinion, made by the flange of the trucks of the engine at the time of the disaster, which was the cause of the wreck. I noticed the lip of the switch at the joint where the engine left the track had a heavy mark on it, as if having been struck by the flange of the trucks of the engine."

Brakeman Lamont, who was on the wrecked train, testified that he examined the switch and track after the accident, and he described its condition as follows:

"Well, at the end of the switch I could see where I thought the engine or some of the cars had jumped the rail. That switch was constructed on ties just placed on top of the ground. The track was not finished, but that much of it was done the night before, not yet having time to fill in the dirt."

There was considerable other evidence along this line; and there was considerable evidence that there

was a half-inch "lip" at the switch connection, and
that with a half-inch "lip" the engine would be liable
to climb, and that a switch so constructed would not
be properly constructed and would probably make
trouble. This is some evidence tending to support
the allegations of the petition, and was properly sub-
mitted to the jury. To offset this evidence, the de-
fendant below introduced a piece of track iron and a
piece of the flange of a wheel, to demonstrate to the
jury that the flange of an engine could not catch on a
half-inch "lip." These irons were, by agreement of
both parties, taken by the jury to their room for them
to experiment with, and the defendants below submit-
ted special questions upon this subject to the jury,
and received the following special findings thereon :

" Ques. Is it not a fact that the switch at Bangor,
where the wreck occurred in which Downs lost his
life, was properly constructed under the supervision
of division roadmaster Fisher? Ans. We think not.

" Q. Is it not a fact that in the construction of said
switch the employees of the defendant used due and
reasonable care? A. We think not.

" Q. Is it not a fact that a wheel of either engine
or cars, unless badly worn, will not catch and climb
a half-inch lip? A. We think it might.

" Q. State whether or not there is any evidence in
this case that in the construction of this switch there
was left a half-inch lip on the end of the rail by the
parties who constructed it. A. There was no evi-
dence prior to the wreck ; but immediately after there
was."

It is also contended that the defective switch con-
nection must not only be shown to exist, but that the
Receivers either had notice of the defects complained
of or by the exercise of ordinary care and diligence
might have obtained such notice. Many authorities
are quoted to sustain this contention. This is famil-

556   ROUSE, *Receiver*, v. DOWNS, *Administratrix*.

S. Dept.          Opinion.   Dennison, P. J.        5 Kan. App.

iar law and we heartily concur in the contention. The claim in this case is that the defect in the switch connection was in its construction, and that notice to the division roadmaster under whose supervision it was constructed is notice to the Receivers, and that therefore, as he superintended its construction, he was aware of its condition, and if it was defective, of course he must have known it.   This was properly submitted to the jury.

The court committed no error in overruling the demurrer to the evidence of the plaintiff below, nor in refusing to instruct the jury to find for the defendants below.

The fourth subdivision relates to the instructions requested by the defendants below, number two of which reads as follows :

" In case you find for the plaintiff you can only find for her in such amount as she would have been likely to have received from deceased from the time of his death until he would be twenty-one years old, unless you further find that there was some agreement or understanding between the plaintiff and deceased that he should continue to contribute to her support after he should become twenty-one years old.   Then you can find for the plaintiff in such further sum as deceased would, in all probability, have contributed to her during her expectancy or probable duration of life."

The plaintiff in error claims that the refusal to give this instruction was a material error prejudicial to his rights.   In his brief occurs this statement :

" Of course it will be pointed out that the jury, notwithstanding the court's instructions, in their findings claim to have allowed the plaintiff only such sum as he would have contributed to his mother from the time of his death until he was twenty-one years of age ; but, if the court had properly instructed the

jury, it is probable they would not have allowed her anything. And the fact that the jury refused to obey the court's instructions, is no justification or excuse for the court's error.''

In the special verdict the jury found that the plaintiff below was entitled to $250 for the value of the services of her son until he was twenty-one years of age. The other item of damages is not discussed in this connection. It seems to us that counsel for plaintiff in error is not consistent in his claim. He contends that the law is that the mother can recover for the value of the son's services until he is twenty-one years old, and that if the court had instructed the jury that such was the law they would not have given her even that, and that the fact that the jury refused to obey the court's instructions, is no justification for the court's error. While it may not justify an error of the court, if the court committed error, we may also say that if the jury found the plaintiff below entitled to the items allowed her under the law, the defendant below cannot complain that the court refused to so instruct the jury that they could not allow her what she was legally entitled to.

The court gave the jury the following instruction :

'' Every case must depend on its own circumstances, and the jury may take into consideration all the matters as shown by the evidence which go to make the life of the deceased of pecuniary value to his mother, and to award such compensation therefor, not exceeding the amount claimed in the petition, as in the good sense and sound judgment of the jury would be right, in accordance with justice and equity, and warranted by the facts and circumstances of the case.''

We think this is sufficiently explicit, and under this instruction the jury adopted the theory of the plaintiff in error as to the correct measure of damages. Surely he is in no condition to complain.      —

558 ROUSE, *Receiver*, v. DOWNS, *Administratrix*.

S. Dept.         Opinion.   Dennison, P. J.         5 Kan. App.

Instructions three and four asked for by plaintiff in error and refused by the court read as follows :

"3. If you are satisfied from all the evidence that said switch was properly constructed and that the defendants, their servants, agents, or employees were reasonably careful in its construction, you will find for the defendants.

"4. In case you find from all the evidence that said switch and switch connection was constructed with reasonable care and that the same afterwards became out of repair you will find for the defendant."

The court instructed the jury as follows :

"13. If you should find from the evidence that the defendants' servants and agents exercised ordinary care and prudence in the replacing of the rails of said main track, and in the arrangement of the switch connection, so that, when they left the said track in a completed and finished condition, the said railroad track was reasonably safe for the use of defendant's employees running and operating trains thereon, then and under these circumstances the defendants are not liable in this action and the plaintiff would not be entitled to recover, unless you should find the defendant liable under the circumstances indicated in the following instruction. In connection with the foregoing instruction and as modifying the same, you are instructed that if you find that the said track and switch were constructed with ordinary care and prudence, and that the same as completed were in a condition of reasonable safety as before explained, but if you should find that intermediate the completion of said work and the derailing of the train said track and switch connection became out of repair so that the accident in question occurred, then and under those circumstances, if they existed, the defendants would not be liable for the said switch and switch connections getting out of repair unless the servants and agents of said defendants whose duties were to see to the condition of the track and switch connections had actual notice of the alleged defects,

Rouse, *Receiver,* v. Downs, *Administratrix.* 559

March 3, 1897.     Opinion.     Dennison, P. J.          E. Div.

or in the exercise of ordinary care and prudence should have acquired such notice and should have remedied the same."

We think the instructions given cover the exact ground as do those refused. The court may state the law in its own language.

Another reason why the court did not err in refusing to give instructions three and four is that they are predicated upon the theory that the switch connection was properly constructed and that reasonable care was used in its construction. The jury specially find that the switch connection was not properly constructed, and that reasonable care was not used in its construction. It has repeatedly been held that it is not error to refuse to give an instruction when the jury find against the theory upon which it is predicated.

Instruction six asked for by the plaintiff in error, and refused by the court reads as follows :

"If the jury believe, from all the evidence in this case, that the switch and switch connection at Bangor, were constructed and made by the section men and work gang, said employees would be the co-employees of the deceased, Major W. Downs, and for any negligence of any of said co-employees the defendants herein would not be liable and you must find for the defendants."

It is claimed that the court erred in refusing this instruction. The pleadings put in issue the question of whether this work was done under the supervision, direction and control of the vice principal and managing agents for that class of work for the company. The evidence is uncontradicted that division roadmaster Fisher superintended the construction of the switch connection. In *A. T. & S. F. Rld. Co. v. Moore* (31 Kan. 197), it was held that a road master is, in

the line of his duty, the representative of the company. In the first special question quoted above it is assumed by the plaintiff in error that the switch was constructed under the supervision of roadmaster Fisher, and the question seems to be whether or not it had been properly constructed. We think there was no evidence upon which to base instruction number six, and the court did not err in refusing to give it.

The judgment of the District Court is affirmed.