PHILIP VEGINAN *vs.* C. D. MORSE.

Worcester.   October 3, 4, 1893. — November 28, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Personal Injuries — Notice of Injury — Writ — Employers' Liability Act — Action — Evidence.*

If notice of the time, place, and cause of an injury is not served until after the writ is made in an action for the injury under the employers' liability act, (St. 1887, c. 270,) although the notice is left at the defendant's house on the same day the writ is dated, the action cannot be maintained.

At the trial of an action for personal injuries occasioned to the plaintiff while working, in the defendant's employ, upon a planer which had two sets of knives, the upper set, which were protected by a bonnet and blower, planing the upper side of the boards, and the lower set, which were unprotected, planing the under side of the boards, the plaintiff, for the purpose of showing the defendant's neglect in not having the under set of knives protected, and that such protection was usual, asked him, "Don't you know that B.'s planers doing the same kind of work have blowers?" He also asked another witness, who had worked on planers elsewhere, whether he had seen guards upon planers, and whether the planers he had worked upon had such guards. These questions were excluded. *Held,* that the plaintiff had no ground of exception.

Tort, for personal injuries occasioned to the plaintiff while in the defendant's employ, on September 12, 1892. The declaration contained three counts, the first two of which were under the employers' liability act, St. 1887, c. 270, and the third was at common law. Trial in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

The writ was dated October 11, 1892, and was served on October 12, at 9.30 o'clock, A. M., by attachment, and upon the defendant afterwards, on October 15, 1892. The notice of the time, place, and cause of the injury was dated October 11, and was left at the defendant's house in the afternoon of the same day, and actually received in hand by the defendant on October 12, 1892.

The plaintiff and the person who took the notice to the defendant's house testified that they went together to the office of the attorney who made the writ, on October 11, and while they were there the notice was written and the writ was made and dated; and that the notice was then given to the bearer to take to Millbury, where he delivered it at the defendant's house in the afternoon.

The defendant asked the judge to rule that, the notice not having been served before the writ was issued, the action upon the counts under the employers' liability act could not be maintained. The judge so ruled, and the plaintiff excepted; and the case proceeded upon the remaining count.

There was evidence tending to show that the plaintiff was employed to work in the mill yard of the defendant in the latter part of June, 1892; that he was then entirely unacquainted with the defendant's machinery, and was not in terms employed to work upon any machinery; that he had been frequently called from the mill yard into the defendant's mill, to take lumber from the rear end of a planer then and there used by the defendant in his works; that the planer had two sets of knives, one of which planed the upper side of the boards, which were run through it with the aid of rollers, and fed by the person in front in charge of the machine, and the other set of knives, which planed the under side of the boards, and which revolved under the bench, about ten inches from the rear, on a cylinder of about five inches

diameter, which knives and cylinder were entirely unguarded, unprotected, and uncovered; and that the lower edge of the knives, as they revolved on this cylinder, were about twenty-seven inches from the floor and under the bench of the planer, except the portion of the knives that projected through the upper planer of the machine to plane the under side of the boards that passed over the knives.

There was also evidence tending to show that the knives could not have been seen by the plaintiff while taking lumber from the rear of the bench, as he stood up; and he testified that he neither knew the danger nor the location of the knives under the planer. It also appeared that the upper knives on the same planer were protected by a bonnet and blower, which covered the knives and took the shavings away; and that the plaintiff had been taking shavings away from the rear of the planer with a shovel as a part of his duty. The plaintiff testified that the defendant took the shovel away from him, and made him use his hands to fill the basket in taking away the shavings; that when injured, the plaintiff's duty required him, by direction of the defendant, to take away the boards from the rear of the planer; that there was no table or other means of sustaining the boards as they came through the planer close to the rear end thereof, and the shavings had become so full under the end of the planer as to clog up and hinder the taking of the boards away; that the plaintiff, for the purpose of clearing the shavings from the rear of the planer, kicked the shavings with his foot to clear them away while he was also in the act of taking short boards, from two to four feet in length, of which he had an armful; and that his foot struck the knives under the end of the planer, and was cut off. There was evidence for the defence, that the plaintiff had been warned not to use his foot to kick out the shavings, and that other means were provided for that purpose; all of which was denied by the plaintiff.

The plaintiff, for the purpose of showing the neglect of the defendant in not having the knives protected under the machine, and that such protection was usual, asked the defendant, who was a witness, the following question: "Don't you know that Mr. Baker's planers doing the same kind of work have blowers, and are protected under and on top?" This question

was objected to by the defendant, and excluded; and the plaintiff excepted.

Thomas Strafford, a witness for the plaintiff, testified that he was at work upon Baker's planer in Worcester, and had been at work on Morse's planer in Millbury, and had run both planers; that there was a bonnet or blower to take away the shavings on the top cutter of the planer, but that there was nothing of the kind on the rear or lower cutter. He was asked by the plaintiff the following questions: " 1. Was there any blower to take away the shavings on the planers doing the same work as Morse? 2. Have you seen, in your experience among planers other than this of Mr. Morse, doing the same kind of work, guards or protection to the knives under the planer? 3. Whether other planers that you have worked upon have anything to take away the boards from the rear of the planer?" These questions were severally objected to by the defendant, and excluded; and the plaintiff excepted.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*W. A. Gile*, for the plaintiff.

*W. S. B. Hopkins*, for the defendant.

HOLMES, J.  1. In statutes like that under which two counts of this action were brought, the requirement of notice is held to make a condition precedent to the right to bring an action, not on a nice interpretation of the particular words used, but upon a general view of what the Legislature would be likely to intend. *Gay* v. *Cambridge*, 128 Mass. 387. *Moyle* v. *Jenkins*, 8 Q. B. D. 116, 118. *Keen* v. *Millwall Dock Co.* 8 Q. B. D. 482, 484, 485. Roberts & Wallace, Employers' Liability, (3d ed.) 310. In this case the writ was made out before the notice was served. The making of the writ is *prima facie* the commencement of the action. *Gardner* v. *Webber*, 17 Pick. 407. *Bunker* v. *Shed*, 8 Met. 150, 153. It is true that the notice was left at the defendant's house on the same day. But the writ was not made out provisionally, as in *Seaver* v. *Lincoln*, 21 Pick. 267, and there is no reason, except the presumable intention of the plaintiff to begin his action effectually, why the writ should be considered to have been purchased after the notice was served. The fact is the other way, and such a fiction would

not "most accord with the truth and justice of the case," within the doctrine of *Badger* v. *Phinney*, 15 Mass. 359, 364, and *Gardner* v. *Webber*, 17 Pick. 407, 413. The ruling that the action could not be maintained upon the two counts in question was correct.

In face of the express testimony that the plaintiff could not have seen, and did not see, the revolving knives of the planer, and did not know the danger, we cannot assume, as in *Toomey* v. *Donovan*, 158 Mass. 232, 237, that he did know it, or ought to have known it, whatever we might say as jurymen. The plaintiff originally was not hired specially to work on machinery, but to work in the mill yard. We cannot say, as matter of law, that by the terms of his employment he took the machine as it was, although it may have been open to the jury to find that he had acquired such knowledge, and that he had been put to work on the machine so frequently that it had become one of the risks which he assumed under his later employment.

2. We assume, for the purposes of the case, that the plaintiff was entitled to go to the jury, and had a right to put in any proper evidence bearing on the question whether the defendant had exercised reasonable care in providing and maintaining the machinery used by him. The questions put for this purpose were questions as to the use of guards upon other specified machines elsewhere, or upon some machines not specified, within the observation of the witness. The question to the defendant, "Don't you know that Mr. Baker's planers . . . have blowers?" was not an inquiry into his knowledge at the time of the accident, but was an emphatic form of question, on cross-examination, intended to bring out an admission of the present fact. The most general questions put did not go to the point of establishing that planers usually had guards, but were inquiries whether the witness had seen guards upon planers, and whether the planers he had worked upon had such guards. These questions were excluded.

It has been held to be competent for the purpose mentioned to show what other kinds of machinery or appliances were used elsewhere by the defendant, and might have been used at the place of the accident. *Myers* v. *Hudson Iron Co.* 150 Mass. 125, 138. No doubt such evidence may be competent to prove

the practical possibility of the appliance, if disputed. See *Commonwealth* v. *Leach*, 156 Mass. 99, 102, 103. But it raises collateral issues, (*Bailey* v. *New Haven & Northampton Co.* 107 Mass. 496, 498,) and much must be left to the discretion of the presiding judge, to determine whether there is sufficient similarity in the case offered to make it instructive, (*Hill Manuf. Co.* v. *Providence & New York Steamship Co.* 125 Mass. 292, 298, 303,) and to see that under the guise of showing what is practicable some other establishment is not set up as a standard of the defendant's duty, (*Le Barron* v. *East Boston Ferry Co.* 11 Allen, 312, 315, and *Wheeler* v. *Wason Manuf. Co.* 135 Mass. 294, 298, 299,) or a mere accumulation of instances, not shown to be all or a majority of the class, made the foundation of an argument as to what is usual. If, to prove the practicability of a guard, the judge had let in the evidence offered as to certain other planers in Worcester and Millbury, we could not have said that he was wrong on the facts before us, but neither can we say that he was wrong in excluding it. So far as appears, the case may have been tried on the assumption by all parties that it was possible, and known by the defendant to be possible, to put on such a bonnet as was described, and it may have been manifest that the evidence was offered for a different purpose, as indeed was admitted, if we are to take the bill of exceptions literally. The evidence was offered "for the purpose of showing the neglect of the defendant in not having the knives protected under the machine, and that such protection was usual."

*Exceptions overruled.*