BELLEVILLE STONE COMPANY OF NEW JERSEY, PLAINTIFF IN ERROR, v. ANN COMBEN, ADMINISTRATRIX OF ROBERT COMBEN, DECEASED, DEFENDANT IN ERROR.

1. In an action to recover damages for the death of a workman employed by the defendant in his stone quarry, caused by being struck by a swinging drag-rope and knocked off the ledge on which the deceased

was working—*Held*, that it was competent for the plaintiff to show the manner in which such drag-ropes were supported in other quarries to prevent their swinging, in order to aid the jury in determining whether the defendant had exercised reasonable care in the arrangement of the drag-rope in question.

2. Where the trial judge charges the jury that the employer contracts with his employe to use reasonable diligence to protect him from ordinary risks, it is not error for the judge to omit, in that connection, the qualifying words, "not obvious to the employe," where the learned judge expressly told the jury that "when the employment presents special features of dangers, yet of such a nature or character that they must have been known to the employe, such as are open and obvious to one ordinarily skilled in the employment, then the servant also assumes the risks of those obvious dangers in taking the employment."

On error to the Essex Circuit Court.

Argued at November Term, 1897, before MAGIE, CHIEF JUSTICE, and Justices DEPUE, GUMMERE and LUDLOW.

For the plaintiff in error, *Hayes & Lambert.*

For the defendant in error, *Thomas J. Lintott.*

The opinion of the court was delivered by

DEPUE, J.   This was an action brought by the defendant in error as plaintiff against the Belleville Stone Company, to recover damages arising from the death of the deceased. The deceased was an employe of the company as a workman in its stone quarry. He was working on a ledge of rocks in the quarry, called the pinnacle, and was struck by a swinging drag-rope and knocked off of the ledge and was killed. The negligence of the company, which is relied on to sustain this action, is that the drag-rope was not properly supported.

At a former trial the trial court nonsuited the plaintiff. On writ of error the Court of Errors and Appeals reversed the judgment of nonsuit and awarded a *venire de novo*. The case was retried and resulted in a verdict for the plaintiff, and is brought before this court on assignments of error touching the conduct of the trial. The facts in this case appear sub-

stantially in the opinion of Mr. Justice Lippincott, in the Court of Errors and Appeals. *Comben* v. *Belleville Stone Co.*, 30 *Vroom* 226.

Upon the record there are eighteen assignments of error. Of these but few require notice. In the brief submitted in behalf of the plaintiff in error, these assignments of error are set out as relied on :

"*First.* There should have been a nonsuit or a verdict directed for the defendant, on the grounds (1) that the danger from the rope was an obvious one, the risk of which was assumed by the servant in his contract of hiring, and (2) that the accident was caused by the negligence of a fellow-servant."

The evidence on this trial, at the close of the plaintiff's case, was substantially the same as in the former case, and the opinion of Mr. Justice Lippincott holds that, upon the evidence, a motion to nonsuit should not prevail.

"*Second.* Evidence of methods of operation used in other quarries was admitted to show that the method used by the defendant was a negligent one."

Witnesses on the part of the plaintiff were allowed to testify as to the methods generally used to prevent the swinging of ropes used for the purpose that this rope was used for. In the opinion of Mr. Justice Lippincott, in the former case, the learned judge used this language : " There is evidence to show that when the rope was taut it would not only be from eight to ten feet above the head of the intestate, but also it would not approach nearer to him than from five to eight feet, but when it was slackened it was liable to sweep across the ledge or face of the rock where the intestate was at work. It is in evidence that in a quarry worked close by this one, by similar machinery, this drag-rope was held by hangers." In *Atz* v. *Manufacturing Company*, 30 *Vroom* 41, 45, Mr. Justice Magie, in discussing the master's duty to his employe, says that " the master is bound to make such inspection as ordinary prudence requires ; that this would involve the use of such tests and devices as are known to the master or are so commonly employed in such inspections that the master might reasonably be deemed to have knowledge of them."

The evidence objected to under this head was presented in this manner : The witness, a quarryman, was asked the question, " Do you know what is generally used to prevent ropes in such a position as that from swinging ? "   He answered, " Yes, I do."   "*Q.* What ? "   "*A.* There is generally used a tight line—a tight wire rope ; on this tight wire rope there was pulleys or hangers like that [illustrating], that caught on this tight wire rope, and the sag was allowed, as it was coming back towards the derrick, or whatever it was—this thing went right through here—see ?—like that ; therefore, this tight rope could not move a person one foot at the best ; that was generally used in this same quarry."   The question was objected to and a motion made to overrule the answer, which was denied by the court.   This testimony was competent under the rulings in this case in the Court of Errors, and in Atz *v.* Manufacturing Company, and is sustained by the decisions of other courts.   *Myers* v. *Hudson Iron Co.,* 150 *Mass.* 125, 138 ; *Murphy* v. *Greeley,* 146 *Id.* 196 ; *Wheeler* v. *Wason Manufacturing Co.,* 135 *Id.* 294, 298.   In Myers *v.* Hudson Iron Co. evidence was admitted to show that other machinery or appliances than those used by the defendant would have been safer.   The court justified the admission of such testimony, in these words : " In order to aid the jury in determining whether the defendant had exercised reasonable care in providing and maintaining the machinery in actual use, it was competent to show what other kinds of machinery or appliances were used elsewhere and might have been used at the shaft."   The learned judge, in his charge to the jury, made no other use of this testimony.

"*Third.* The charge of the court misstated the duties which a master owes to his servant, to the prejudice of the defendant."

On this subject the charge of the learned judge was as follows : " The duty imposed on the defendant company by the contract of hiring was to not subject the deceased, without his knowledge and consent, expressed or implied, to risks not assumed by him under the contract of hiring.   An employer

contracts with his employe to use reasonable diligence to protect him, the employe, from ordinary risks, and for omission of such diligence or want of care the employer may become liable to the employe for all damages arising therefrom." He added an extract from the opinion of the Court of Errors and Appeals, as follows: " The duty of a master toward a servant in his employ is to exercise reasonable care and skill to provide safe machinery and appliances for carrying on the business in which he employs the servant, and in keeping such machinery and appliances in a safe condition for such use, including the duty of making inspection and tests at proper intervals whilst the work progresses." This instruction is substantially in compliance with the opinion of Mr. Justice Dixon, in *Steamship Company* v. *Ingebregsten,* 28 *Vroom* 400, 401, and conforms to the rule uniformly laid down for determining the conditions under which a master will be liable for injuries sustained by his servant.

The instructions of the learned judge placed the liability on the basis of the negligence of the company, namely, to use reasonable diligence not to subject the deceased to ordinary risks not assumed by him. The criticism on this instruction, that the expression " ordinary risks " should have been qualified by the words " not obvious to the employe and in regard to which he had not been warned," is without substance, for the learned judge expressly told the jury that " when the employment presents special features of dangers, yet of such a nature or character that they must be known to the employe, such as are open and obvious to one ordinarily skilled in the employment, then the servant also assumes the risks of those obvious dangers which he enters upon voluntarily in taking the employment."

"*Fourth.* The evidence of Arthur Flynn, as to the rope striking Comben, should have been stricken out."

This witness testified that he saw Comben working on that pinnacle about two minutes before he was thrown over; that the next he saw was, he was lying down dead; that he was just alongside of him, " forninst where Bob Comben was

killed; the first I saw of him he was striking a drill on top, and the next he was on the bottom;" that when he turned his back the deceased was turned over on his face; that he didn't see him struck by the rope, but saw him just about two minutes before it, working, and did not see him thrown over the precipice. This evidence was competent. Its effect was for the jury.

We find no error upon the record, and the judgment should be affirmed.