WILLIAM T. JANVRIN & others, petitioners.

Suffolk.    March 24, 27, 1899. — November 28, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Metropolitan Water Supply — Water Rates — Constitutional Law.*

The provisions of § 23 of St. 1895, c. 488, entitled "An Act to provide for a metropolitan water supply," as amended by St. 1897, c. 336, giving to actual water takers within ten miles of the state house of the city of Boston aggrieved by the rate charged or about to be charged, the right to apply to the court to determine the reasonableness of the rate and what rates are reasonable so far as the interests before the court are concerned, is constitutional.

PETITION, filed October 11, 1898, by the selectmen of Revere, a town within a radius of ten miles from the state house in Boston, and within the metropolitan water district as designated by St. 1895, c. 488, entitled "An Act to provide for a metropolitan water supply."

The petition alleged that within Revere, a corporation known as the Revere Water Company was engaged in the business of supplying the inhabitants thereof with water for domestic and other purposes; that the rates charged to the inhabitants by that company for water supplied for domestic and other purposes was unreasonable, exorbitant, and greatly disproportionate to the prices ordinarily charged for a similar service in the other cities and towns within said metropolitan water district.

The prayer was that the court would fix the rate to be charged by the company for water supplied to the inhabitants of Revere at a reasonable sum, measured by the price ordinarily charged for a similar service in the other cities and towns within the metropolitan district.

The Revere Water Company, which had been summoned to appear, demurred, assigning as grounds therefor: 1. That the petition did not contain any matter of law or equity whereon the court could ground any decree, or give to the petitioners any relief against the defendant. 2. That the jurisdiction of the court over the matters contained in the petition depended upon the validity of the provisions of St. 1897, c. 336, and that that statute was unconstitutional and void.

Hearing before *Hammond*, J., who reserved the case for the consideration of the full court.

The case was argued at the bar in March, 1899, and afterwards was submitted on briefs to all the justices.

*S. R. Cutler*, (*B. B. Dewing* with him,) for the petitioners.

*B. N. Johnson*, for the Revere Water Company.

HOLMES, C. J.   The only question raised by the demurrer is the constitutionality of the provision of St. 1897, c. 336, § 1, under which the petitioners proceed.   This section amends § 23 of the Metropolitan Water Supply Act, St. 1895, c. 488.   It embodies a scheme which forbids cities or towns within ten miles of the state house to use water for domestic purposes, from any source not now used by them, except under the statute.   This

prohibition standing alone might seem to put into the hands of a water company now supplying any such town or city the power to make exorbitant charges, by giving it a monopoly. Therefore, with a view, no doubt, of dealing with the danger, the section just referred to provides as follows: "The select men of a town, or any persons deeming themselves aggrieved by the price charged for water by any such company may, in the year eighteen hundred and ninety-eight and every fifth year thereafter, apply by petition to the Supreme Judicial Court, asking to have the rate fixed at a reasonable sum, measured by the standard above specified; and two or more judges of said court, after hearing the parties, shall establish such maximum rates as said court shall deem proper; and said maximum rates shall be binding upon said water company until the same shall be revised or altered by said court pursuant to this act."

When we first read this sentence the impression of some of us was that it was an attempt to make out of this court a commission for the taking of one step in fixing a legislative rule of future conduct, irrespective of any present relation between the parties concerned, and that it was no more competent for the Legislature to impose or for us to accept such a duty than if the proposition were to transfer to us the whole law-making power. See *Smith* v. *Strother*, 68 Cal. 194. But upon further reflection it seems to a majority of the court that the act can be sustained. If we can do so without perverting the meaning of the act, we are bound to construe it in such a way that it will be consistent with the Constitution, and we think that this can be done without any wresting of the sense, even if we should doubt, which we do not intimate that we do, whether the Legislature had the limit of its power distinctly in mind.

The statute goes upon the footing that every taker of water from the companies in question has a right to be furnished with water at a reasonable rate. No one questions the power of the Legislature to require these water companies to furnish water to the takers at reasonable rates, (*Attorney General* v. *Old Colony Railroad,* 160 Mass. 62, 86, 87 ; *Spring Valley Water Works* v. *Schottler,* 110 U. S. 347, 354 ; *Budd* v. *New York,* 143 U. S. 517, 537, 549, 552,) and this statute does require the companies to do so, and thereby gives to water takers a correspond-

ing right, or declares that they have it.  It is with the relations between actual water takers and the companies that the statute calls on this court to deal.  It does not undertake merely to make of the court a commission to determine what rule shall govern people who are not yet in relation to each other, and who may elect to enter or not to enter into relations as they may or may not like the rule which we lay down : it calls on us to fix the extent of actually existing rights.  With regard to such rights judicial determinations are not confined to the past.  If it legitimately might be left to this court to decide whether a bill for water furnished was reasonable, and, if not, to cut it down to a reasonable sum, it equally may be left to the court to enjoin a company from charging more than a reasonable sum in the immediate future.

But it has been regarded as competent for a court to pass on the reasonableness of a rate even when established by the Legislature, to the extent of declaring it unreasonably low.  *Chicago, Milwaukee, & St. Paul Railway* v. *Minnesota*, 134 U. S. 418.  *Chicago & Grand Trunk Railway* v. *Wellman*, 143 U. S. 339, 344. *Reagan* v. *Farmers' Loan & Trust Co.* 154 U. S. 362.  *Smyth* v. *Ames*, 169 U. S. 466.  *A fortiori*, when the rate is established by the company and it has undertaken to charge the plaintiff a sum which he alleges to be unreasonable, and the Legislature in terms has referred him to this court, this court has "jurisdiction to inquire into that matter and to award to the [plaintiff] any amount exacted from him in excess of a reasonable rate."  *Reagan* v. *Farmers' Loan & Trust Co.* 154 U. S. 362, 397.

It is true that in *Reagan* v. *Farmers' Loan & Trust Co.* it was said, also, that " it is not the function of the courts to establish a schedule of rates," 154 U. S. 400 ; and to that proposition we fully agree.  But it will be observed that the proposition is laid down in connection with the statement that " the challenge in this case is of the tariff as a whole, and not of any particular rate upon any single class of goods."  Probably to prepare a new schedule, or to rearrange the old one, would have gone beyond the scope of the rights immediately affected or threatened in the case before the court, into the realm of abstract law making for the future, and so beyond the power of the court; and, if it had not been beyond the court's power, still

very possibly it might have been refused in the court's discre-, tion, the court leaving it to the proper body to undertake that task. But it is implied that if the challenge had been of a single rate threatened to be charged for a service demanded, the court might have determined the question between the parties for the immediate future, as it is stated three pages earlier that the court would determine it with regard to a charge for past services. When you are prepared to say that a given charge is · too high or too low, it hardly would be consistent to say that you had not power or ability to say what is a proper charge.

It is true that the phrase " shall establish such maximum rates as said court shall deem proper," and the following provision that such "maximum rates shall be binding upon said water company until the same shall be revised or altered by said court," etc.; suggest that the Legislature had in mind the estab- lishment of a rate to be charged to all parties for the use of water for domestic purposes, and not merely a rate to be charged the petitioner. It may be that the former was the main object which the Legislature had in mind. But although we cannot doubt that the meaning of the words last quoted is that the rate shall be binding as a general rate, even that is not said dis- tinctly, and we feel bound to assume in support of the act that the Legislature is dealing primarily with the rights of the party aggrieved before the court, and only secondarily adopts in advance the rate thus fixed between the parties as a general rate for all. If this is so, the question whether such a legislative consequence can be attached to the decision is not before us. Even if it should fail, the failure would not necessarily affect the constitutionality of sending " persons deeming themselves aggrieved " to this court to get their rights settled. But as it is not likely that a rate thus established for a given moment after full investigation would be departed from upon the application of a second person similarly circumstanced, it may be questioned whether there is anything to prevent the Legislature from sanc- tioning without further hearing a rate which once has been de- clared judicially to be reasonable. It is to be remarked in this connection that the decisions which we have cited for the proposi- tion that the Legislature may require rates to be reasonable, estab- lish the further proposition that the Legislature may fix what the

rates shall be, subject only to judicial inquiry whether they are so unreasonably low as to deprive the company of its property without due compensation.

It will be understood from the reasoning on which we sustain the act that the court would not regard itself as warranted or called on to undertake the fixing of rates except so far as they concern interests actually and legitimately before the court.

The liberty to apply to this court is confined to the year 1898 and every fifth year thereafter, so that seemingly it is contemplated that the rate when fixed will remain unchanged for five years. This is another indication that the Legislature had its attention directed to the establishment of a general rate. But supposing a party aggrieved should obtain an injunction, obviously the decree would be drawn so as to bind the defendant for a reasonable time, or, if it were drawn in the common form, subject to review on a change of circumstances, the court would not be likely to grant leave to file a bill of review until a reasonable time had elapsed, and if the Legislature should say that in these cases five years was a reasonable time, we could not say that it was wrong. It is true that the party aggrieved is not given an injunction in terms by the act, and this is another peculiarity in the procedure, looking as it does to a decree affecting the future. Of course it is assumed, and no doubt rightly, that a company would not venture to disregard the decree. But if a company should prove recalcitrant, in case such disregard should not be construed as *ipso facto* a contempt, undoubtedly the decree could be enforced by injunction.

There is still one more peculiarity in the statutory proceedings which adds a little to the difficulty of the question before us. We have construed the statute to deal primarily with existing rights and grievances. But the proceedings are given to "the selectmen of a town, or any persons deeming themselves aggrieved." So far as the alternative mention of the selectmen should be used as an argument that the primary purport of the act was not to deal with present rights, we should answer that it does not appear that the towns within the ten mile radius do not all of them take water in their corporate capacity, and if it was assumed by the Legislature that they did, as they probably do, the argument would lose its force. It may be that the Legis-

lature thought of the selectmen rather as representing the whole body of water takers in the town. Whether they could be made compulsory agents to represent private interests in that way it is not necessary to inquire. We may add that we understand the demurrer to be intended to raise the single question of constitutionality, and therefore we do not consider whether the petition in strictness ought not to show that the town or whoever may be represented by the petitioning selectmen is a water taker, and, in short, disclose enough to make out a present grievance. If there is any defect of form, which we do not intimate, probably it could be amended.

One question remains. The fixing of a reasonable rate is not left at large to the court. The rate is to be "a reasonable sum, measured by the price ordinarily charged for a similar service in the other cities and towns within said metropolitan district." Of course it is argued that this is an attempt to let one company fix a price for another. To a certain extent the standard runs in a circle, since the price charged by water companies in the other towns within ten miles of Boston also may come before this court for revision. But leaving that consideration on one side, it is evident that the Legislature regarded the cities and towns referred to as constituting a class; and while a mere accumulation of instances is not evidence of what is reasonable, the general practice in the class to which a case belongs stands on a different footing, and if the circumstances are sufficiently similar may be instructive. See *McMahon* v. *McHale, ante,* 320 ; *Veginan* v. *Morse,* 160 Mass. 143, 148.

As has been said, the cases establish the power of the Legislature to fix rates, subject to the qualification that they shall not be unreasonably low. It cannot be assumed on demurrer, as against the implied opinion of the Legislature, that the circumstances are not similar, or that all the prices in the ten mile circuit will be unreasonable. If in the opinion of the court at any time they should be so, no doubt in that event it would be bound to disregard the standard of comparison set for it by the act. The governing requirement is that the price should be reasonable. But, especially in view of the fact that companies furnishing the standard have before them the possibility of a petition like the present, such a possibility is not to be feared.

It is suggested that the duty to be done by the court sitting with two justices, under this statute, calls for an investigation of details and the consideration of matters of administration which cannot properly be required of the Supreme Judicial Court. If an extended investigation of accounts or an examination of minute details is necessary in the hearing upon this petition, it will be in the power of the court to appoint a master, in accordance with the practice of the court in equity, to hear the parties and report the facts. The statute authorizes a novel proceeding not known to the common law. It does not say whether it shall be deemed a proceeding at law or a proceeding in equity. In some particulars it is more nearly analogous to suits in equity than to suits at law. It is a judicial investigation in aid of a legislative regulation. In actions at law, when accounts are involved, an auditor may be appointed. The Legislature must be presumed to have intended that the court should have the assistance of a master when needed in hearing such matters as have always been heard by masters under the equity practice of the court.

*Demurrer overruled.*