ADA I. RAYMOND *vs.* PORTLAND RAILROAD COMPANY.

Cumberland.    Opinion December 6, 1905.

*Street Railways.   Negligence.   "Great Care."   "Due Care."   "Ordinary Care."   Reasonable Care.*

The plaintiff was a passenger on one of the street railway cars of the defendant. There was evidence tending to show that the car, an open one, had come to a stop near the point of intersection with the tracks of a steam railroad, that it was the practice and custom of the defendant to stop there, but that the only purpose of the stop was to safeguard the crossing of said tracks, it not being a place where a stop was regularly made for passengers to get off or on the defendant's cars, although it was also in evidence that passengers did sometimes get off or on the cars while so stopping. There was likewise evidence tending to show that while the car was stopping at said point of intersection that the plaintiff undertook to alight therefrom but that while she was in the act of alighting and before she had reasonable time to alight that the car was started whereby she was thrown and injured.

At the trial of this action, the presiding Justice, at the request of the plaintiff's counsel, gave the following instruction to the jury : "If you believe that this was the crossing of tracks, and that under the practice and custom of the company, the cars stop at this crossing and believe that people get on or off at this place, while cars are stopped, then it was the duty of the conductor in charge of the car to ascertain for himself whether passengers wanted to get on or off; and if he could by great care discover who wanted to get off, whether they wanted to get off, that would be equivalent to actual knowledge on the subject."

This instruction imposed upon the conductor the duty of exercising "great care" to discover if anyone wanted to get off the car. It is not modified by any other clause in the charge but rather emphasized by a statement

made immediately before it that "the railroad was bound to use greater than ordinary care."

The law requires that the conductor should have acted only in the exercise of reasonable care. The phrase "great care" as used in the instruction was without limitation. It was left entirely to the jury to say what meaning should be attached to it. Under it the jury may have said that it was the duty of the conductor to inquire of every passenger upon his car if they wished to alight and that if he failed to do this in the exercise of the duty requiring "great care," he was negligent. Or if so strenuous a duty as to inquire of each passenger was not deemed necessary in the exercise of "great care," the jury might have found that some other burdensome duty was imposed by the instruction given.

The rule of law now generally recognized by the great weight of authority is that the legal measure of duty, except that made absolute by law, with respect to almost all legal relations, is better expressed by the phrases "due care," "reasonable care," or "ordinary care," terms used interchangeably. Reasonable care may be defined as such care as an ordinarily reasonable and prudent person exercises with respect to his own affairs, under like circumstances. In this definition it is the phrase "under like circumstances" that imposes upon the term "reasonable care" both its limitations and its elasticity. The term is a relative one; the same act under one set of circumstances might be considered due care and under different conditions a want of due care, or negligence. Therefore the duty intended by the use of the phrase "ordinary care," is always referable to the circumstances and conditions, under which the act or omission to act is required to be performed. These limit or define the scope of the situation within which the performance of the same act may be called reasonable or unreasonable.

*Held:* That the exceptions to the requested instruction given as aforesaid must be sustained.

On exceptions and motion by defendant. Exceptions sustained. Motion not considered.

Action on the case for negligence to recover for personal injuries to the plaintiff while a passenger on one of the cars of the defendant, a street railway corporation. Tried at the October term, 1904, Supreme Judicial Court, Cumberland County. Verdict for plaintiff for $969. Defendant excepted to a certain instruction given by the presiding Justice at the request of the plaintiff's counsel, and also filed a general motion for a new trial. Exceptions sustained. Motion not considered.

The case appears in the opinion.

Memorandum. This case was argued at the June term, 1905, of the Law Court at Portland. One of the Justices sitting at said

term did not sit in this case being disqualified under the statute by reason of having ruled therein at nisi prius.

*Charles E. Gurney*, for plaintiff.

*Libby, Robinson, Turner & Ives*, for defendant.

SITTING: EMERY, STROUT, SAVAGE, SPEAR, JJ.

SPEAR, J. This is an action on the case for negligence to recover for personal injuries to the plaintiff while a passenger on one of the cars of the defendant, a street railway corporation. The case comes up on motion and exceptions. It was alleged in the plaintiff's declaration and evidence was introduced by the plaintiff tending to show that the defendant's car had been brought to a full stop near the tracks of a steam railroad, that the car was started again while the plaintiff was in the act of alighting therefrom, and before she had had sufficient and reasonable time to alight, whereby she was thrown and injured.

The defendants offered evidence tending to show that the car, an open one, had come to a stop near the point of intersection with the tracks of the steam railroad; that it was the practice and custom of the defendant to stop there, but the only purpose of the stop was to safeguard the crossing of the said tracks, it not being a station or place where a stop was regularly made for passengers to get off the defendant's cars, although it was in evidence that passengers did sometimes get off or on the defendant's cars there; that throughout the stop the conductor of the car remained upon the car and was standing all the time on the running board on plaintiff's side of the car but a few feet behind her and with his attention upon his passengers of whom he had an unobstructed view; that another employee of the defendant left the car and went forward to see if the crossing could be made in safety, and upon finding the way clear gave the signal for the car to proceed; that the plaintiff never made any movement to leave her seat until the car was again in motion after having made it stop to safeguard the crossing of the tracks, when without giving any indication by signal or otherwise to the conductor or anybody else, that she desired or intended to alight, she suddenly slid down from

her seat to the running board and thence off the car while it was in motion and gathering headway to cross the tracks of the steam railroad. The report of the evidence shows that the contention of the respective parties as above set forth is correctly stated.

Upon these contentions, at the request of the plaintiff's counsel, the presiding Justice gave the following instruction to the jury: "If you believe that this was the crossing of tracks, and that under the practice and custom of the company, the cars stop at this crossing and believe people get on or off at this place, while cars are stopped, then it was the duty of the conductor in charge of the car to ascertain for himself whether passengers wanted to get on or off; and if he could by great care discover who wanted to get off— whether they wanted to get off, that would be equivalent to actual knowledge on the subject." To this instruction the defendant seasonably excepted. The defendant also requested certain instructions but in view of the conclusion necessarily arrived at with respect to the above instruction, it becomes unnecessary to consider this request by the defendant. We think the exception must be sustained. The instruction imposed upon the conductor the duty of exercising "great care" to discover if any one wanted to get off the car. This instruction is not modified by any other clause in the charge but rather emphasized by the statement made immediately before it that "the railroad was bound to use greater than ordinary care."

We think the law required that the conductor should have acted only in the exercise of reasonable care. The phrase "great care" as used in the instruction was without limitation. It was left entirely to the jury to say what meaning should be attached to it. They may have said that it was the duty of the conductor to inquire of every passenger upon his car if they wished to alight and that if he failed to do this in the exercise of the duty requiring "great care," he was negligent. Or if so strenuous a duty as to inquire of each passenger was not deemed necessary in the exercise of "great care," the jury might have found that some other burdensome duty was imposed by the instruction given.

The rule of law now generally recognized by the great weight of authority is that the legal measure of duty, except that made

absolute by law, with respect to nearly all legal relations, is better expressed by the phrases "due care," "reasonable care" or "ordinary care," terms used interchangeably. Reasonable care may be defined as such care as an ordinarily reasonable and prudent person exercises with respect to his own affairs, under like circumstances. In this definition it is the phrase "under like circumstances" that imposes upon the term "reasonable care" both its limitations and its elasticity. The term is a relative one; that is, the same act under one set of circumstances might be considered due care, under different conditions a want of due care or negligence. Therefore the duty intended by the use of the phrase "ordinary care," is always referable to the circumstances and conditions, under which the act or omission to act is required to be performed. These limit or define the scope of the situation within which the performance of the same act, may be called reasonable or unreasonable. The same rule is now generally held to apply to employment in the most perilous places and in the manipulation and use of the most dangerous agencies. A person may be engaged upon a most treacherous machine, yet the employer is held only to the exercise of reasonable care in explaining the hazard connected with the machine and the operation of it. One may employ the use of dynamite or any other powerful explosive and yet he is responsible only for due care. But in each of these cases due care, under the flexibility of the definition given, might, in the minds of the jury or of the court, require the exercise of the highest possible care which human effort could bestow; but yet it would be in the end only such care as an ordinarily prudent and careful man would exercise under like circumstances with respect to his own affairs.

The A. and E. Enc. of Law, 2nd Ed. Volume 21, page 459, under the heading, Degrees of Negligence, summarizes the authorities as follows: "The theory that there are three degrees of negligence, described as slight, ordinary, and gross, was introduced into the common law from some of the commentators of Roman law. While not in frequent use references are still found in judicial discussions of the subject to the classification of negligence into degrees, the tendency of modern authority and the weight of the best considered cases are now opposed to this view, holding that in every case, negligence,

however described, is merely a failure to bestow the care and skill which the situation demands and hence it is more accurate to call it simply negligence. Some decisions even go further and declare that the classification of negligence into degrees is a matter of pure speculation and of no practical consequence; that it is useless and tends to confusion, that in fact it is unsafe to base any legal decision on distinction in the degrees of negligence."

In *Steamboat New World* v. *King*, 16 Howard, 262, Mr. Justice Curtis, in delivering the opinion of the court, said: "The theory that there are three degrees of negligence prescribed by the terms slight, ordinary and gross has been introduced into the common law from some of the commentators of the Roman law. It may be doubted if these terms can be usefully applied in practice. Their meaning is not fixed or capable of being so. One degree, thus described, not only may be confounded with another, but it is quite impracticable exactly to distinguish them. Their signification necessarily varies according to circumstances, to whose influence the courts have been forced to yield until there are so many general exceptions that the rules themselves can scarcely be said to have a real operation. Then he proceeds to quote from *Storer* v. *Gowan*, 18 Maine, 177, as follows: "How much care will in a given case relieve a party from the imputation of gross negligence or what omission will amount to the charge, is necessarily a question of fact, depending upon a great variety of circumstances which the law cannot exactly define."

In *Perkins* v. *New York Central Railroad Company*, 24 N. Y. 196, the court say: "I think with Lord Denman, who, in *Hinton* v. *Dibbin*, 2 Q. B. 661, said: "It may well be doubted whether between gross negligence and negligence merely, any intelligent distinction exists."

In *Railroad Company* v. *Lockwood*, 17 Wallace, 382, Mr. Justice Bradley, delivering the opinion of the court, said: "We have already adverted to the tendency of judicial opinion adverse to the distinction between gross and ordinary negligence . . . . . . And this seems to be the tendency of modern authors."

In *Milwaukee Railroad Company* v. *Ames et al.*, reported in 91 U. S. page 494, the court say: "This court has expressed its

disapprobation of these attempts to fix the degrees of negligence by legal definition. . . . . . . Some of the highest English courts have come to the conclusion that there is no intelligent distinction between ordinary and gross negligence. . . . . "Gross negligence is a relative term. It is doubtless to be understood as meaning a greater want of care than is implied by the term 'ordinary negligence'; but after all it means the absence of the care that was necessary under the circumstances." See also *Rowse* v. *Downs*, 5 Kan. App. 549; *McPheters* v. *Hannibal, etc., R. Co.*, 45 Mo. 22; *Reed* v. *Western Union Tel. Co.*, 135 Mo. 661; *Culbertson* v. *Halliday*, 50 Neb. 229.

It will be here observed that the courts in discussing the above propositions have used the term negligence instead of the word care, to express the measure of duty. But confusion has arisen from regarding "negligence" as a positive instead of a negative word.

For this reason it is usual to express the duty owed in positive terms by stating what constitutes *due care*, rather than in negative terms by stating what constitutes *negligence* which is the unintentional failure to perform a duty implied by law. "Negligence" is the opposite of "due care." Where due care is found, there is no negligence. If there is a want of due care then there is negligence. We are inclined to agree with the great weight of judicial opinion that the attempt to divide negligence, or its opposite due care, into degrees will often lead to confusion and uncertainty. It seems to us therefore that the measure of duty, owed by persons in the discharge of their mutual relations, would be better expressed by the use of the term negligence, if one prefers a negative definition, or due, reasonable or ordinary care, always having reference to the circumstances and conditions with regard to which the terms are used. In view of the above conclusion it becomes unnecessary to consider the motion.

*Exceptions sustained.*