GOLDENBERG CO., Inc., v. SCHICHT
(four cases).
Nos. 6485–6488.

United States Court of Appeals for the
District of Columbia.

Decided March 30, 1936.

Rehearing Denied April 17, 1936.

Morris Simon, Lawrence Koenigsberger, Eugene Young, and William H. Collins, all of Washington, D. C., for appellant.

James A. O'Shea, Alfred Goldstein, and John H. Burnett, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

These appeals are taken from judgments for damages recovered in the lower court by appellees against appellant because of injuries sustained by appellees resulting from the falling of an elevator in which they were passengers in the department store of appellant.

The testimony tends to show that on January 4, 1933, the appellees, Gertrude Schicht, a minor, and her mother, Anna Schicht, were shopping at the store of appellant in the city of Washington, D. C. They entered a passenger elevator at the fourth floor in order to descend to the first floor. The elevator was lowered to the second floor without difficulty and stopped there to take on and let off passengers. When leaving the second floor the elevator could not be controlled by the operator and it fell to the basement of the shaft, a distance of about 28 feet. It appears that Gertrude and her mother were injured by the fall, and the present actions were brought by them for damages because of such injuries and were tried together with corresponding actions brought by Alfred Schicht, the father of Gertrude and the husband of Anna, who claimed damages because of medical expenses and loss of services incident thereto.

The cases were tried to the jury, verdicts were returned in favor of the respective plaintiffs, and judgments were entered thereon. The present appeals were then taken.

In the first count of their declarations the plaintiffs alleged that the defendant negligently permitted the elevator in question to be in an unsafe condition, the shackle and shackle bolt to be out of order, the cables to be in an unsafe condition, the elevator safety to become in an unsafe condition, and that defendant's employees were without competent skill; that they negligently operated the elevator; and that as a consequence thereof the elevator fell from the second floor to a point at or near the basement floor causing the injuries complained of.

The plaintiffs also charged that the defendant had failed to comply with the requirements of certain municipal ordinances relating to elevators and that the accident was caused in part by such failure; however, we need not enlarge upon this subject.

The defendant filed pleas in the several cases denying all allegations of negligence, and alleging that the elevator fell as the result of a condition existing in the mechanism and appliances thereof which took place and existed without the prior knowledge of the defendant, that inspection did not and could not disclose such conditions prior to the accident, and that the elevator was properly built, inspected, and maintained; and was operated with due care.

In a bill of particulars filed by defendant it was stated that the defective condition which existed in the mechanism and which caused the fall was the result of crystallization of one or both of the cables by means of which the elevator was raised and lowered.

It appears that the car in the elevator was hoisted or lowered by means of two

cables, each consisting of six strands of wire, each strand composed of nineteen steel wires; the cables were attached to a crossbeam at the top of the car by means of shackle bolts; that in attaching the cables to the car the lower end of each cable was first brought through the neck of the shackle bolt and then opened up or fanned out; that the shackle bolt was then turned upside down and molten babbitt poured into the neck of the bolt, which latter was conical in shape; that when the babbitt cooled and solidified it acted in the same manner as a nut or bolt would act, and prevented the cable from sliding out through the neck of the shackle bolt; that the shackle bolt was then bolted to the top of the car, at the crossbeam; that the other ends of the cables were fastened in the drum and as the drum revolved it would pull the cables up and lift the car; that on the bottom of the car was a safety device which consisted of two so-called spear heads, or "spreaders," controlled by a governor at the top of the shaft; that the governor would come into operation automatically when the car in descending attained an abnormally high speed and would actuate the safety so that the spearheads would gradually extend out from under the car and imbed themselves into the guide rails along which the car moved, thus bringing the car to a stop; that this safety device was independent of the hoisting cables, and if the hoisting cables would break and the elevator would descend at a speed in excess of that set for its proper operation, the safety should normally take hold in from three to six feet and bring the car to a stop within eleven feet; that this under-car safety device was the only means of bringing the car to a stop in case of the breaking of the cables, inasmuch as none of the electrical controls would then be operative.

The elevator in question was capable of carrying twenty-four passengers. At the time of the accident now in question there were only twenty-three passengers in the car. The accident therefore did not result from an overloading of the car.

It appears that the accident resulted from the simultaneous breaking of both hoisting cables. The break occurred at the shackle bolt, either within the babbitt in the bolt, or immediately at the edge thereof. It is claimed by appellant that the cables broke inside the babbitt metal which surrounded them and by which they were designed to be held, and that such a break was not visible and could not be discovered by inspection; that accordingly the accident did not occur as a result of negligence or want of proper inspection; nor by reason of a lack of skill of its employees; nor by reason of faulty construction or maintenance; but that it occurred notwithstanding the careful inspection which the defendant's employees had regularly made of the entire apparatus.

We are unable to agree with the defendant's contention. The degree of care required of defendant in the construction and management of the passenger elevator is well set out in the language of Mr. Justice Van Orsdel in the case of Munsey v. Webb, 37 App.D.C. 185, 187, affirmed 231 U.S. 150, 34 S.Ct. 44, 58 L.Ed. 162, wherein it is said: "It is important at the outset to consider the duty which defendant owes to persons entering his building for legitimate purposes, and using the elevators placed therein for their accommodation. The building in question is a business block devoted to public use. The elevators are an essential part of the building, and persons using them do so by the invitation of the defendant. It follows, therefore, that defendant in this instance is a carrier engaged in the transportation of passengers. While not, in the strict sense, an insurer, he is required to exercise the highest degree of diligence and care for the safety of persons using his elevator as agencies of transportation. It is doubtful if there is any known method of conveyance in which a higher degree of care is required in its construction and operation than that of an elevator. In Mitchell v. Marker, 62 F. 139, 10 C.C.A. 306, 22 U.S.App. 325, 25 L.R.A. 33, Mr. Justice Lurton said: 'We see no distinction in principle between the degree of care required from a carrier of passengers horizontally, by means of railway cars or stage coaches, and one who carries them vertically, by means of a passenger elevator.' "

In our opinion the record does not disclose that the appellant exercised in this instance such a degree of care as is thus required. Appellant claims that it would be impossible by careful inspection to detect breaks of the wires occurring within the babbitt metal, and this is doubtless true. It is also doubtless true that

this manner of fastening the end of the cable into the shackle bolt is recognized as a correct method of construction, and as it appears from the record accidents caused by breaks of the wires within the babbitt metal are exceedingly rare and almost unheard of. Nevertheless the possibility that such breaks may occur makes it necessary when such means are used of fastening the cables to the car to provide by proper renewal of such material at frequent intervals in order to prevent accidents such as the one now in question. Such renewals would require comparatively little time or expense. In fact, after the occurrence of this accident it appears that the ends of the cables were quickly sawed off and re-babbitted and locked again in the shackle bolt and that the operation kept the elevator out of use for only a short time.

The jury was entitled on the evidence to find that the defendant's failure to exercise such vigilance in preventing accidents caused by the breaking of the wires within the babbitt material was culpable negligence. We therefore hold that the judgments of the lower court upon the verdict should be and they are affirmed with costs.

Affirmed.

STEPHENS, Associate Justice (concurring).

I concur in the result. I think it not necessary, however, and hence not desirable, to decide that one engaged in the transportation of passengers by elevator is under a duty to use the "highest degree of care." And I think that the cases of Munsey v. Webb, 37 App.D.C. 185, affirmed 231 U.S. 150, 34 S.Ct. 44, 58 L.Ed. 162, and Southern Ry. Co. v. Taylor, 57 App.D.C. 21, 16 F.(2d) 517, certiorari denied 273 U.S. 767, 47 S.Ct. 571, 71 L.Ed. 882, contain but dicta on the subject— the first actually passing merely upon the question of proximate cause of the accident involved, the second ruling only upon the questions whether the elevator operator and a repairman of the same were fellow servants and whether the owner-operator of the elevator was a common carrier. But in view of the dangerous instrumentality involved, and in view of the fact that there was evidence to the effect that mere external inspection of the shackle bolt would not disclose internal defects, I think it cannot be said that no

reasonable juryman could conclude that due care, that is, that of an ordinarily prudent man, would require periodic renewal of the shackle bolt, not mere external inspection. Hence the trial court properly refused to take the case from the jury.