HECHT CO., Inc. v. JACOBSEN et al.

No. 10035.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 8, 1949.

Decided Jan. 16, 1950.

Mr. Austin F. Canfield, Washington, D. C., with whom Mr. Ralph F. Berlow, Washington, D. C., was on the brief, for appellant.

Mr. Lestor Wood, Washington, D. C., for appellees.

Before McALLISTER, sitting by designation, WILBUR K. MILLER and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

This is an appeal from a judgment awarding damages to plaintiffs below because of defendant's negligence. The episode out of which this suit arose occurred in appellant-defendant's department store on November 15, 1945. At that time, Betty-Lynne Jacobsen (plaintiff-appellee), a four-year-old child, and her seven-year-old sister were accompanying their mother, who had been shopping at appellant's store. While the three were descending from the third to the second floor on an escalator, Betty-Lynne broke away from her mother, who had allegedly been holding the child's hand, and ran down the moving steps. Before her mother was able to overtake her, Betty-Lynne had fallen at the point just above the aperture where the escalator steps break and enter the floor. As she tried to arise, her right hand was caught in the aperture. The small finger of that hand was so badly injured that it had to be amputated that same day. The child also developed an unsightly scar which required plastic surgery.

According to the testimony, the escalator on which the accident occurred was a 1934 model and was functioning smoothly. (Most of the escalators used in the store were of 1941 construction, which model had a smaller aperture at the point where the steps disappeared into the floor than did the 1934 model.) The escalator's "stop" button was not conspicuously marked and there was no attendant at hand. Nor was there a warning sign calling attention to possible dangers. There was evidence, however, that the appliance had passed a District of Columbia inspection each year.

Suit was brought by the child's father in his own behalf for medical expenses and loss of services and, on the child's behalf, for injuries suffered by her. Both were awarded damages by the jury.

Appellant challenges the verdict below on four grounds: the standard of conduct prescribed by the lower court was incorrect; even if appellant were negligent, such negligence was not the proximate cause of the injury; the admission of certain evidence was prejudicial error; and the amount of damages awarded was excessive.

■ The standard of conduct required of owners and operators of elevators in the District of Columbia has been held to be the "highest degree of care" in the construction, maintenance and operation of those appliances.[1] Like elevators, escalators are an "essential part of the building, and persons using them do so by the invitation of the defendant." Munsey v. Webb, 1913, 37 App.D.C. 185, 187. Such persons must constantly rely upon the care with which the owner has performed his obligation of selecting safe machinery and maintaining and guarding it properly. The lower court correctly regarded escalator and elevator as functional equivalents and hence subject to the same standard of care.[2]

■ The charge given to the jury below proceeded on the theory that there are three degrees of care and, upon the authori-

1. Goldenberg Co. v. Schicht, 1936, 65 App. D.C. 336, 83 F.2d 593; Southern Ry. Co. v. Taylor, 1926, 57 App.D.C. 21, 16 F.2d 517; Munsey v. Webb, 1913, 37 App.D.C. 185, affirmed 231 U.S. 150, 34 S.Ct. 44, 58 L.Ed. 162.

2. Cf. May Dept. Stores Co. v. Bell, 8 Cir., 1932, 61 F.2d 830, 834; S. S. Kresge Co. v. McCallion, 8 Cir., 1932, 58 F.2d 931, 932-933; Petrie v. Kaufman & Baer Co., 1927, 291 Pa. 211, 139 A. 878, 879; McBride v. May Dept. Stores Co., 1931, 39 Ohio App. 420, 177 N.E. 773, 775.

ty of the elevator cases, that appellant was obligated to exercise the "highest degree of care." In its very able explanation of the charge, however, the court recognized that, because of the greater danger involved in this case, "reasonable care under all the circumstances" required what was in effect the "highest degree of care." It was pointed out that the appellant's position "as an operator of an escalator" made it necessary that he "* * * use the highest degree of care for the safe carriage of such infant plaintiff as a passenger. This higher degree of care does not make the defendant an insurer of the infant plaintiff's safety, but it does require the defendant to exercise *all due care, skill and foresight within reason* for the safe carriage of its passengers. The failure to exercise that degree of care constitutes negligence * * *." (Emphasis supplied throughout.)

In addition, the court stated that the degree of care imposed by law "* * * may vary according to what the relationship of the parties is, it may vary according to the person, the circumstances of the case * * *." It thus made clear that what is "reasonable" in certain circumstances may be unreasonable in others; that the particular factual context may vary the care which must be exercised.[3] For example, the large number of people who are regularly invited to use a department store escalator make any defect or carelessness in its construction or operation potentially very dangerous. And since persons accompanied by small children are often among the invitees, the precautions taken and care exercised by the escalator owner must reflect an awareness of that fact and hence must be proportionately greater.[4] The lower court properly instructed the jury to this effect when it said that

"It is ordinarily necessary to exercise greater care for the protection and safety of a young child than for an adult person who possesses normal physical and mental faculties.

"One dealing with children must anticipate the ordinary behavior of children. The fact that they usually cannot and do not exercise the same degree of prudence for their own safety as adults, that they are often childish and impulsive imposes a duty to exercise a proportional vigilance and caution on those dealing with children, and from whose conduct injury to a child may result."

If such content had not been given to the "highest degree of care," and instead, the meaning thereof left entirely to the jury, we might well have been compelled to find error in the charge. Raymond v. Portland R. Co., 1905, 100 Me. 529, 62 A. 602, 604, 3 L.R.A., N.S., 94. But so implemented, the charge is satisfactory. See Note, 34 Harv.L.Rev. 789 (1921).

We do think, however, that it would have been more in accord with the modern authorities to discuss the standard of conduct required of appellant in terms of "reasonable care under all the circumstances."[5] That formula contains within it the potential for flexibility in application which is necessary to deal with the infinite number of fact situations which may arise. It readily permits change with changing circumstances. Under such a view, the greater than ordinary danger posed by the existence of an escalator with an aperture between treads and floor large enough to catch hold of a child's hand, in a place frequented by children, would be among the circumstances to be called to the attention of the fact-finder, whether court or

---

**3.** Compliance with standards and precautions established by custom would not necessarily discharge this obligation of care proportioned to the circumstances because "what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Holmes, J., in Texas & Pacific Ry. Co. v. Behymer, 1903, 189 U.S. 468, 470, 23 S. Ct. 622, 623, 47 L.Ed. 905, 906; Hellweg v. Chesapeake & Potomac Telephone Co.,

1940, 71 App.D.C. 346, 348, 110 F.2d 546, 548.

**4.** Reynolds v. May Dept. Stores Co., 8 Cir., 1942, 127 F.2d 396, 397, certiorari denied 317 U.S. 639, 63 S.Ct. 31, 87 L.Ed. 515; cf. Crane v. Smith, 1943, 23 Cal.2d 288, 144 P.2d 356, 361; see Prosser, Torts 246–7 (1941).

**5.** See discussion and authorities collected in Prosser, Torts 256 et seq. (1941);

jury. If the escalator in use were found to be potentially dangerous, a factor to be weighed in determining whether the proper quantum of care had been exercised would be the adequacy of the compensatory precautions taken by the appellant, i. e., stationing of attendants, warning signs, etc. We believe that the instructions given to the jury below were entirely consistent with this view. But the possibility of confusion which may attend such a charge when not as well explained suggests the desirability of avoiding reference to "degrees of care."[6] As said by the Colorado court in the leading case of Denver Consolidated Electric Co. v. Simpson, 1895, 21 Colo. 371, 41 P. 499, 501, 31 L.R.A. 566, involving a fallen electric power line which injured a pedestrian, "We think the court was unfortunate in attempting to draw any distinctions in the degrees of care or negligence. It would have been safer and the better practice to instruct the jury,—which ought hereafter to be observed,—even in cases like the one before us, that the defendant was bound to exercise that reasonable care and caution which would be exercised by a reasonably prudent and cautious person under the same or similar circumstances. In addition to this, the jury should have been instructed that the care increases as the danger does, and that, where the business in question is attended with great peril to the public, the care to be exercised by the person conducting the business is commensurate with the increased danger. But, in effect, that is what the court did Under the facts of the case, the law required of the defendant, conducting, as it did, a business so dangerous to the public,

the highest degree of care which skill and foresight can attain, consistent with the practical conduct of its business under the known methods and the present state of the particular art. * * * It was, therefore, not prejudicial error for the court to tell the jury in this case what the law requires of the defendant, viz., the highest degree of care in conducting its business."[7]

■ The charge of the court below with regard to standard of conduct correctly grasped the essentials of the concepts outlined above and, therefore, was not reversible error. The mere fact that reference was made to "degrees of care" does not alter the situation,[8] for it is settled that a charge is to be viewed as a whole rather than divided into isolated segments.[9] As we have already indicated, the statement that defendant was required to exercise "all due care, skill and foresight within reason," and that the circumstances varied the amount of care required, satisfactorily resolved the ambiguity which might otherwise have been present.

■ As to the question of proximate cause, appellant argues that it was the mother's failure to properly care for her child which caused the injury. We think that the owner of a department store must be held to be presumptively aware of the tendency of children to stray even from vigilant parents, especially when subjected to the varied fascinations found in such a store. It is with this tendency in mind that precautions should be taken. Thus, the failure to take reasonable steps to guard against injuries due to the aperture between the escalator treads and the floor,

Harper, Torts 170–171 (1933); 38 Am. Jur., Negligence, § 43 (1941).

6. In addition to note 5 supra, see New York Central R. R. Co. v. Lockwood, 1873, 17 Wall. 357, 84 U.S. 357, 382–383, 21 L.Ed. 627, 641; Milwaukee & St. Paul Ry. Co. v. Arms, 1875, 91 U.S. 489, 494–495, 23 L.Ed. 374, 376; Steamboat New World v. King, 1853, 16 How. 469, 57 U.S. 469, 473–474, 14 L.Ed. 1019, 1021–1022.

7. Cf. S. S. Kresge Co. v. McCallion, 8 Cir., 1932, 58 F.2d 931, 932; Gilbert v. Duluth General Electric Co., 1904, 93 Minn. 99, 100 N.W. 653, 655, 106 Am.St.Rep. 430;

see Smith, Liability for Substantial Physical Damage to Land by Blasting, 33 Harv.L.Rev. 542, 553 (1920).

8. As an Iowa court said in Denny v. Chicago, R. I. & P. Ry. Co., 1911, 150 Iowa 460, 130 N.W. 363, 364, the differentiation of negligence into degrees "has come to mean little more than a matter of comparative emphasis in the discussion of testimony."

9. Danzansky v. Zimbolist, 1939, 70 App.D. C. 234, 237, 105 F.2d 457, 460; S. S. Kresge Co. v. McCallion, supra note 7, 58 F.2d at page 934.

might properly have been found by the jury to be the proximate cause of the injury.[10]

Two objections to rulings on evidence remain for consideration. First, the lower court admitted evidence of a prior accident which occurred some years before under similar circumstances, i. e., to a three-year old child on the same 1934 model escalator but on a different floor. "Evidence of prior accidents has always been admissible to show defendant's notice or knowledge of the defective or dangerous condition alleged to have caused the accident." Sullivan v. Detroit & Windsor Ferry Co., 1931, 255 Mich. 575, 238 N.W. 221, 222; Capital Traction Co. v. Copland, supra note 10, 47 App.D.C. at pages 156-157. Second, it is urged that the court acted improperly when it admitted photographs of, and permitted the jury to view, the 1941 model escalator which was in use in the greater part of the store; it was on the 1934 model escalator that the accident herein occurred. Evidence of the improved model was not admitted for the purpose of establishing a standard of conduct. That would clearly be error. Hellweg v. Chesapeake & Potomac Telephone Co., 1940, 71 App.D.C. 346, 348, 110 F.2d 546, 548. Here, the evidence concerning the later model was admitted only to aid the jury in its determination of whether appellant took all precautions "within reason."[11] In his charge, the judge below said: "* * * the failure or omission of the defendant to install the more modern or up-to-date escalator when the same came on the market is not of itself an act of negligence, unless it appears from a fair preponderance of the evidence that the person exercising the highest degree of care, skill and foresight within reason for the safe carriage of his passengers would supplant the old installation with the new and would not continue to use the old installation because of the

hazards to its passengers." Given such a careful circumscription of its purpose, the evidence was properly admitted, under the rule announced in the Hellweg case, supra, 71 App.D.C. at page 347, 110 F.2d at page 547: "If, while in the exercise of such care, it had reasonable grounds to apprehend that lightning would be conducted over its wires to and into the house, and there do injury to persons or property, * * * then it was the defendant's duty to exercise due care in selecting, placing, and maintaining * * * such known and approved appliances as were reasonably necessary to guard against accidents that might fairly be expected to occur * * *."

Since such evidence goes only to the question of what could reasonably have been done, there is no need to prove that a given precaution has attained the status of a custom. As Justice Holmes said in Veginan v. Morse, 1893, 160 Mass. 143, 35 N.E. 451, 452, so long as the trial court, in its discretion, concludes that the jury will not be unduly confused, it is "competent * * * to show what other kinds of machinery or appliances were used elsewhere by the defendant, and might have been used at the place of the accident." Testimony that "there were safer contrivances for controlling such a descent, some of which the defendant used elsewhere about the mine" was admitted in another case because "the jury might properly consider what could be done to secure safety." Myers v. Hudson Iron Co., 1889, 150 Mass. 125, 22 N.E. 631, 633, 15 Am.St.Rep. 176, quoted approvingly in Washington & G. R. Co. v. McDade, 1890, 135 U.S. 554, 573-574, 10 S.Ct. 1044, 1050, 34 L.Ed. 235, 242. Similarly, in Chicago Great Western Ry. Co. v. McDonough, 8 Cir., 1908, 161 F. 657, 663, the court held evidence of boiler tests used by one other railroad admissible, saying,

10. Burdine's, Inc., v. McConnell, 1941, 146 Fla. 512, 1 So.2d 462, 463; cf. Capital Traction Co. v. Copland, 1917, 47 App. D.C. 152, 159.

11. "The plaintiff in all negligence cases may show that better, safer, and more practicable devices than those used were available to the defendant." Delmore v. Polinsky, 1945, 132 Conn. 28, 42 A.2d 349, 351; Chicago & Northwestern Ry. Co. v. Bower. 1916. 241 U.S. 470, 474, 36 S.Ct. 624, 625, 60 L.Ed. 1107, 1109; Edgarton v. H. P. Welch Co., 1947, 321 Mass. 603, 74 N.E.2d 674, 677-678; Bimberg v. Northern Pac. Ry. Co., 1914, 217 Minn. 187, 14 N.W.2d 410, 414.

"[That railroad] had long owned and operated many stationary boilers in the various shops connected with its extensive railroad, several of which were in the same region as the shops of the defendant, and the fact that the practice stated was followed by that company was some evidence of *what could have been done* by the defendant, and so had a material bearing upon whether it exercised reasonable care in what was actually done."[12]

We do not think that the trial court abused its discretion when it sustained the jury's award of $15,000 to the infant plaintiff and $2,000 to her father.[13] The judgment below is

Affirmed.

12. Cf. Brigham Young University v. Lillywhite, 10 Cir., 1941, 118 F.2d 836, 840–841, 137 A.L.R. 598; Dolan v. Boott Cotton Mills, 1904, 185 Mass. 576, 70 N.E. 1025, 1026–1027; Belleville Stone Co. of New Jersey v. Comben, 1898, 61 N.J.L. 353, 39 A. 641, 642; Deschamps v. L. Bamberger, 1942, 128 N.J.L. 527, 27 A. 2d 3, 4; Erickson v. McNeely, 1906, 41 Wash. 509, 84 P. 3, 5; Camenzind v. Freeland Furniture Co., 1918, 89 Or. 158, 174 P. 139, 144; Silver Falls Timber Co. v. Eastern & Western Lumber Co., 1935, 149 Or. 126, 40 P.2d 703, 720–721; see Commonwealth v. Cohan, 1940, 307 Mass. 179, 29 N.E.2d 693, 695. And see cases collected in Anno., 137 A.L.R. 611, 615 et seq. (1942).

13. Cf. Southern Ry. Co.-Carolina Division v. Bennett, 1914, 233 U.S. 80, 86–87, 34 S.Ct. 566, 567, 58 L.Ed. 860, 863; Crane v. Smith, 1944, 23 Cal.2d 288, 144 P.2d 356, 364.